THE RIVER PARK DISTRICT, Appellee, vs. VIRGIL M. BRAND, Appellant.

*Opinion filed October 22, 1927.*

1. EMINENT DOMAIN—*what is market value of property taken for public use.* The market value of property condemned for public use is its value on the market for its highest and best use if the owner desires to sell it and others desire to purchase it.

2. SAME—*jury may consider market value of picnic grounds for highest and best use.* The fact that property to be condemned for public use has been used as an amusement park and for picnic purposes does not give it such a special use that compensation can not be had by taking its market value for its highest and best use, and the question may be properly left to the jury to determine whether its highest and best use is for picnic purposes or for some other purpose shown by the evidence, but in determining the question tabulations purporting to show the net profits from the use of the property for picnic and amusement purposes should not be received in evidence.

3. SAME—*what statements of property owner are admissible as against interest.* In condemning property for public use statements of the owner at the time the petitioner was negotiating for the property, to the effect that he was making no money out of the property from the use to which it was being devoted, are admissible as admissions against interest where he takes the position on the trial that the property has no market value for any other use; and such statements are not to be excluded on the ground that they were made in an effort to compromise threatened litigation,

where there is no proof that litigation had been threatened, the petitioner, at the time the statements were made, having merely made an offer to buy the property.

4. SAME—*jury may be instructed to consider information obtained from viewing premises.* The jury may be instructed to consider the information they gain from their view of the premises, in connection with the other evidence in the record, in determining the questions of fact submitted to them, and such instruction is not erroneous in telling the jury to allow no compensation for the buildings on the premises if they find from the evidence, including their view of the property, that the buildings do not enhance the value, especially where the buildings are worthless for the highest and best use to which the jury find the premises to be adapted.

5. SAME—*what instruction as to determining market value is proper.* Where the jury are told by other instructions the proper elements to be considered in determining the fair cash market value, it is not error to instruct them that in determining the fair cash market value of the property they should take into consideration only those elements of value shown by the evidence which enter into and affect the fair cash market value on the day of the filing of the petition to condemn, and that elements of value, if any, which the evidence shows do not affect the fair cash market value, should be disregarded.

HEARD, C. J., dissenting.

APPEAL from the County Court of Cook county; the Hon. JOHN D. BIGGS, Judge, presiding.

GEORGE A. MASON, (HENRY E. MASON, W. T. HAPEMAN, D. S. WENTWORTH, and HENRY B. MASON, of counsel,) for appellant.

WILLIAM A. MORROW, (WALTER M. FOWLER, of counsel,) for appellee.

Per CURIAM: The River Park District, a municipal corporation of Chicago, by its commissioners, filed a petition in the county court of Cook county on June 12, 1925, to condemn for park purposes five and a fraction acres of land in the city of Chicago belonging to Virgil M. Brand. No objection was made to the form of the petition or to

the right and power of the petitioner to condemn the land for park purposes. Just compensation for the land was fixed by the verdict of the jury and the judgment of the court at $57,689.75. Besides Brand, the owner of the land, lessees Mathew Hermes and Julius Rhode were made defendants to the petition. Brand has prosecuted an appeal to this court from the judgment.

The petition alleges the park district adopted an ordinance to acquire the land for park purposes and averred the land was necessary for the location and establishment of a public park. Appellant purchased the land in 1901, and it has been used since as a picnic grove and private amusement park. Appellant operated it himself the first year. He was interested in breweries, and the year he operated the land he erected thereon a saloon, bowling alley and dance pavilion. Subsequently he leased the property and it has since been operated by lessees.

The principal contention of appellant is that error was committed in determining the market value of the land, his contention being that the property was of unusual character, devoted to a special use, and had no market value as that term is generally understood, and that compensation should have been fixed upon the basis of the value of the property to the owner for the purpose to which it was devoted. Appellant had placed no buildings, other than those mentioned, on the property and had not repaired those he placed there. George Gauger, a witness for appellee, testified he had had thirty-two years' experience in constructing and appraising buildings. He described the character and condition of the buildings and structures which had been placed on the property. He made an examination of them four weeks before testifying at the trial, which began April 20, 1926. He found them poorly constructed and in bad repair. Four witnesses who were engaged in the real estate business testified for appellee that they knew Brand Park and were acquainted with property and values in

that vicinity. All testified that the highest and best use of the property was for industrial or manufacturing purposes. Three of them testified its value for that purpose was twenty-five cents a square foot, and one of them testified it was from twenty-three to twenty-five cents a square foot. The judgment of $57,689.75 represents a valuation of the property at twenty-five cents a square foot, the highest estimate made by any witness who said the highest and best use of the property was industrial.

Julius Rhode, one of the lessees, testified on behalf of appellant. He testified he had been connected with Brand Park for six years and for twenty-five years had been an amusement promoter and had operated amusement devices in different places. He presented a tabulation of the gross income and net profits of the operation of the park from the year 1921 to and including 1925. The tabulation was admitted in evidence over the objections of appellee. Witness testified he and his partner (Hermes) kept a record of the total receipts in a book, but had no record of the shooting gallery, high-striker, candy stand and wardrobe. He made the tabulation from the records and from recollection. He said the tabulation he offered was prepared from daily receipts shown in the book and was an accurate tabulation; that the park was open from May 15 to September 15, but was not operated for picnic purposes between September 15 and May 15. His partner occupied the saloon and sold soft drinks during that period and held bunco parties, for which he received three dollars in the afternoon and five dollars at night. Witness said the tabulation sheets were put in typewriting by a lawyer who represented him as his attorney; that he was present and gave the lawyer the figures from his book; that he did not put the entries in the book,—his partner did that,—but he was present when the items were written in the book and saw it done. The book entries covered five years and were made every day. The number of picnics fell from sixty in 1921 to

thirty-four in 1925, but according to the book account the expense of operation and maintenance was exactly the same each of the five years.

Appellant testified that when he bought the property, in 1901, it was woodland; that he improved it and operated it as a private picnic ground for one year; that after the first year he leased it for picnic purposes; that in his opinion the highest and best use for the property is picnicking and that for that purpose it has a value of $180,000; that he has entertained that opinion of its usage and value since the second year he owned it. On cross-examination he testified, over objections of his attorney, that he talked with the commissioners of appellee in the fall of 1924. They came to his office at the Brand Brewing Company and asked whether he would sell the property. He denied saying to them that in his opinion the best use of the property was for industrial purposes, and stated further that he did not remember saying to Bohn, in reply to the statement of Bohn that he (Brand) was not making money out of the park, "No; the amount I am getting out of that park would not pay half what I am asking for the property— investment on half of what I am asking." On re-direct examination he testified the commissioners inquired what he wanted for the property in cash. He told them they could have it for less than it was worth; that he needed cash and would sell at $120,000—the value shown by his 1910 inventory, plus the cost of paving Otto street, which was about $10,000. They said they had appraised it at $80,000 to $90,000.

After appellant rested, appellee called Bohn, its president. He testified his private business was real estate. He met Brand in the fall of 1924 at the Brand Brewing Company office. They had several meetings. At one time O'Shea was with him. At another time commissioners Gerts and Otte were with him. Witness says that at the time of one meeting, when they were all present, Brand

stated that he considered the best use for the property was manufacturing; that he was not getting out of it for park purposes enough to pay an investment on half of what he asked for the property. Gerts and Otte corroborated him.

Appellant introduced in evidence two leases dated November 30, 1920, letting the premises to Hermes and Rhode for five years. The consideration named for the term is $46,000, but there are a number of conditions recited which materially reduce this amount. The whole evidence considered, it appears the rent paid was less than half the rent stated.

Some errors are assigned by appellant on the admission and rejection of testimony other than as to the market value of the property for the highest and best use for which it was adapted. Twenty-two errors are assigned by him, but the principal one, which is argued at great length, is that the property had no market value as that term is generally understood, because the property was of unusual character, devoted to a special use, and compensation should have been fixed at the value of the property to the owner for the purposes to which it was devoted.

It is not disputed that the rule is that the market value of property condemned for public use is its value on the market for its highest and best use if the owner desires to sell it and others desire to purchase it. (*City of Chicago v. Farwell*, 286 Ill. 415.) In the *Farwell case* the court said there were exceptional cases where the market value cannot be the legal standard of compensation because the property is of such a nature and applied to such a special use that it cannot have a market value, and illustrations given are cases of condemnation of a church, college, cemetery, club house or railroad terminal. The property sought to be taken in the *Farwell case* was used as a soap factory and had been so used for many years, but the court said it was not devoted to such a special use as took it out of the general rule that the market value is the measure of dam-

ages where the property is taken for public use. This subject has received the attention of this court in numerous cases, among them being *Braun* v. *Metropolitan West Side Elevated Railroad Co.* 166 Ill. 434; *Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *Gage,* 286 id. 213; *Illinois Power and Light Corp.* v. *Parks,* 322 id. 313; *Phillips* v. *Town of Scales Mound,* 195 id. 353; *Hartshorn* v. *Illinois Valley Railway Co.* 216 id. 392; *Sanitary District* v. *Baumbach,* 270 id. 128; *Crystal Lake Park District* v. *Consumers Co.* 313 id. 395; *Chicago and Northwestern Railway Co.* v. *Chicago and Evanston Railroad Co.* 112 id. 589.

Appellee's witnesses testified the highest and best use of the property was for industrial and manufacturing purposes. The testimony of appellant and his witnesses was that its highest and best use was for amusement park and picnic purposes. It seems evident the property did have a market value for the most profitable use to which it was adapted. It is not a property of the character of a church, railway terminal, etc., which this court has held do not have a market value as that term is understood. As to whether its highest and best use was for industrial and manufacturing purposes or for amusement park and picnic purposes the witnesses for the respective sides differ, and the question was properly left to the jury.

The court having held that the measure of damages should be the fair cash market value for the highest and best use for which the property was adapted, it was error to receive in evidence the tabulations which purported to show the net profits from the operation of the park. (*Jacksonville and Southeastern Railway Co.* v. *Walsh,* 106 Ill. 253; *Gauley and Eastern Railway Co.* v. *Conley,* 100 S. E. (W. Va.) 290, 7 A. L. R. 157.) This erroneous evidence was evidently rejected by the jury for the reason that the verdict shows that the jury considered the highest and best use of the property to be for industrial and manufacturing

purposes and not for private picnic grounds. The error was in favor of appellant and so could not have harmed him.

One of the real estate dealers testified that there had been a recent sale for industrial purposes of vacant land similar to the land in question and located within a few blocks of it, and that the sale price was fifteen cents a square foot. He had nothing to do with this sale, and his only information concerning it was that which the parties interested had given him and his view of the contract, which stated the price. Another witness for appellee testified, on cross-examination by counsel for appellant, that he had heard of a similar sale where the sale price was twenty cents a square foot. It is contended these sales were of dissimilar property and that the testimony is based on hearsay. The only effect this testimony could have had was to reduce the amount of compensation awarded. The jury allowed the maximum figure fixed by the witnesses who testified that the property was best adapted to industrial and manufacturing purposes, and so it is evident that the testimony concerning the other sales did not affect the jury's verdict. The jury having determined the highest and best use of the property to be for industrial and manufacturing purposes, the testimony that the highest cash market value of the property for the highest and best use to which it was adapted was twenty-five cents a square foot was uncontradicted.

Complaint is made of the court's ruling on admitting the testimony concerning the conversation between appellant and the park commissioners when they were trying to buy the property in the fall of 1924, the contention being that the statements of appellant were made in an effort to compromise threatened litigation. There is no proof in the record that the commissioners told appellant that they were going to institute condemnation proceedings in the event he refused to sell the property voluntarily. As far as the record shows, no litigation was pending and none

was threatened. The commissioners simply made an offer to buy the property, and during the conversation appellant gave his opinion concerning the use to which the property was best adapted and fixed a price for it. The statements made by him at that time are contrary to those made on the trial. They were admissions against interest and were competent. *Brown* v. *Calumet River Railway Co.* 125 Ill. 600.

Complaint is made of an instruction given by the court of its own motion, the contention being that the instruction eliminates the theory of appellant that the property is of that exceptional character which has no market value, and that the instruction confuses the rule applying where the property is such that it has no market value and that applying where the property has a market value. The first objection is without merit, for the reason that the court correctly held the property was not of that exceptional character which has no value in the market. While the instruction is unskillfully drawn, we are of the opinion that the jury was not confused in the application of the rule for fixing the amount of compensation due for the property taken. The instruction tells the jury that it is for it to determine from the evidence, including its view of the premises, what is the highest and best use of the premises, and then states the claims in that regard of appellant and of appellee. It then tells the jury that if it determine that the highest and best use is industrial and manufacturing it shall fix as the compensation for the property the fair cash market value for that purpose as shown by the evidence, but that if it find that the property is best adapted for private picnic grounds it shall then fix as compensation for the property the amount shown by the evidence, including the view of the premises, which the property is worth for private picnic grounds. The instruction states that in fixing the value for picnic ground purposes the jury shall not consider the fair cash market value as defined by the instructions. This statement is inaccurate, but, inasmuch as the

jury has found that the property is not best adapted to pic-
nic purposes, the error could not have affected the jury's
verdict.

Petitioner's instruction No. 3 tells the jury that if it find
from the evidence, including its view of the premises, that
the buildings on the premises do not enhance the value of
the property, then it should allow no compensation for the
buildings as such. Several objections are made to this in-
struction. First, it is contended that the court should have
explained the purpose and effect of the view of the prem-
ises. It is proper for the jury to consider the information
it gains from its view of the premises, in connection with
the other evidence in the record, in determining the ques-
tions of fact submitted to it, (*Department of Public Works
and Buildings* v. *Griffin,* 305 Ill. 585; *Chicago, Ottawa and
Peoria Railway Co.* v. *Rausch,* 245 id. 477; *South Park
Comrs.* v. *Ayer,* 237 id. 211; 2 Wigmore on Evidence,—
2d ed.—sec. 1168;) and it was proper for the court to so
state in the instructions. It is further contended that the
effect of the instruction is to withdraw from the jury the
consideration of the value of the improvements as such.
The evidence in the record is uncontradicted that the build-
ings are worthless for industrial and manufacturing pur-
poses, and, inasmuch as the jury has found that this is the
use to which the property is best adapted, appellant could
not have been harmed by the instruction. The instruction
left to the jury to determine, first, the use to which the
property was best adapted, and second, whether the build-
ings were of any value, considering that use. It did not
direct the jury what its view of the question of fact should
be, nor did it have the effect of taking from the jury a con-
sideration of the improvements on the property. There
was no error in giving the instruction.

Petitioner's instruction No. 7 instructs the jury that in
determining the fair cash market value of the property it
should take into consideration only those elements of value

shown by the evidence which enter into and affect the fair cash market value on the day of the filing of the petition to condemn, and that it should disregard elements of value, if any, which the evidence shows do not affect the fair cash market value of the property. It is contended that this instruction leaves to the determination of the jury the question of law as to what constitutes proper elements of value. In petitioner's instruction No. 6 the court defined the term "fair cash market value." In other instructions the court told the jury the proper elements to be considered in determining the fair cash market value. Instruction No. 7 amounts to a direction to the jury to weigh all the evidence and in the light of the instructions to give each element the weight to which the jury thinks it is entitled. There was no harm in the giving of this instruction.

The rulings of the court on the giving and refusing of other instructions are criticised, but no useful purpose will be served in setting out the criticisms in detail. Many of them are hypercritical, and others are based on the erroneous theory of appellant that the property is of a special character and has no market value. Considered as a series the instructions were not prejudicial to the rights of appellant.

Appellant had his opportunity to meet the testimony offered by appellee as to the value of this property for industrial and manufacturing purposes, but he did not accept it. He chose to rest his case upon the proposition that the property was best adapted for use as private picnic grounds and to fix what he regarded as its value for the purpose. The jury saw the witnesses and heard their testimony. It believed the testimony of the witnesses for appellee and gave no credit to the testimony of witnesses for appellant. The testimony of the latter was contradicted by the physical condition of the property as shown by oral testimony and by a view of the premises. In some respects it was self-contradictory and inherently unreasonable. We agree

with the jury's conclusion on the weight of the testimony and find no error in the record which justifies a reversal of the judgment.

The judgment is affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE HEARD, dissenting.