THE KANKAKEE PARK DISTRICT, Appellee, *vs.* JAMES HEIDENREICH, Appellant.

*Opinion filed December 21, 1927.*

1. EMINENT DOMAIN—*when question of highest and best use is properly submitted to jury.* There are exceptional cases where the market value of land cannot be the legal standard of compensation because the property is of such a nature and applied to such a special use that it cannot have a market value, but where the property has a market value for the most profitable use to which it is adapted, the question whether its highest and best use is for some industrial or manufacturing purpose or for subdivision purposes is a proper question for the jury.

2. SAME—*who may testify as to value of land.* In a proceeding to condemn a certain number of acres of city property for park purposes, witnesses who have had general experience in and about the city in buying and selling real estate and who know the general trend of values and uses to which property is being put in the community are competent to give opinions as to the market value of the land, and the value of their testimony, based on their opportunity for observation and on their intelligence and experience, is a question for the jury.

3. SAME—*when evidence of amount offered for property may be excluded.* Voluntary sales of similar land in the vicinity at or about the time of the condemnation proceeding and recent *bona fide* offers for the property involved made by persons able to buy are admissible in evidence, but the party offering the evidence must show, as a foundation therefor, the similarity of the property sold and the *bona fide* character of the offer, so that the court may determine, as a preliminary question, the admissibility of the evidence, and where no such foundation is laid it is not an abuse of discretion to refuse to permit a witness, who was agent for the owner, to testify how much a certain party had offered for the land.

4. Same—*admissibility of evidence of sales and of offer to buy the land in question rests in discretion of the court—review.* The question of the admissibility of evidence of sales of other land and of an offer to buy the land in question involves the discretion of the trial court, and its discretion in determining the preliminary question of admissibility will not be disturbed unless it is manifestly against the weight of the evidence.

5. Same—*instructions may permit jury to weigh evidence of values with their own observation and experience.* In a condemnation proceeding it is proper to give instructions which tell the jury, in effect, that they may consider their view of the premises, in connection with other evidence, in determining the proper amount of damages to be allowed and that in weighing the evidence they should apply to it the knowledge which they have gained through experience and observation.

6. Evidence—*court may exercise discretion in admitting evidence which tends to confuse issues.* Where in a particular instance the disadvantage arising from a confusion of issues will not be compensated by the assistance of certain useful evidence the trial court should exclude the evidence, but evidence otherwise relevant and useful ought not to be excluded under a universal rule when there is at hand the expedient of leaving it to the discretion of the court to draw a line of exclusion whenever the evil of confusion of issues impends.

Appeal from the County Court of Kankakee county; the Hon. Henry F. Ruel, Judge, presiding.

Hunter & Minor, for appellant.

Eben B. Gower, and T. R. Johnston, for appellee.

Mr. Justice Thompson delivered the opinion of the court:

Appellee, the Kankakee Park District, instituted in the county court of Kankakee county a proceeding to condemn for park purposes about three acres of land, located in the city of Kankakee on the west bank of the Kankakee river, belonging to appellant, James Heidenreich. On the trial before a jury to determine the amount of damages there was a verdict fixing the value of the property taken at

$4000.  Contending that the damages awarded are inadequate and that error occurred on the trial which prejudiced his interests, appellant prosecutes this appeal from the judgment entered on the verdict.

Prior to 1914 appellant conducted a meat-packing plant on the land involved in this proceeding.  At that time there was a main building on the premises 67 feet by 151 feet, with a projection 10 by 32 feet on the south, and three projections, 10 by 10 feet, 7 by 7 feet and 28 by 34 feet, respectively, on the north.  It was constructed of stone and brick and was about 40 feet high.  There were two good wells on the property and a switch-track connecting it with the New York Central railroad.  In 1914 the building was substantially destroyed by fire, and since that time the switch-track has been removed and the piping has been drawn from the wells.  Sewage from the State hospital and from the city empties into the river above this land and flows past it.

Appellant testified that he operated a meat-packing plant on the premises involved between 1909 and 1914 and that no use of the property has been made since the buildings were destroyed by fire; that he still regards the best use for which the property is adapted to be the meat-packing business, and that he has been holding the property with the intention of re-establishing thereon such a business. He has four sons, thirty-six, thirty-four, twenty-eight and twenty-four years old, respectively, two of whom are in the meat business in Chicago.  Appellant has lived in California for a year.  He regards the property worth $20,000. The agent who looks after his property and the proprietor of a rendering works on property immediately adjoining the premises involved testified that the property is worth $7500.

On behalf of appellee seven men engaged in the real estate business in the city of Kankakee for periods ranging from six years to twenty-six years placed values on the

property ranging from $2000 to $3000. Four of these witnesses testified that the best use to which the property was adapted was subdivision into residence lots, and that the eight lots into which it could be subdivided would each have a value of approximately $350. Two of the witnesses testified that it was best adapted for industrial purposes, and the seventh was uncertain for what use the property was best suited but fixed its value upon the fact that it was river front property reasonably well suited for either residential or industrial purposes.

It is not disputed that the rule is that the market value of property condemned for public use is its value on the market for its highest and best use where the owner desires to sell it and others desire to buy it. There are exceptional cases where the market value cannot be the legal standard of compensation because the property is of such a nature and applied to such a special use that it cannot have a market value, but this is not that case. This property has not been in use for thirteen years, and it is not different from other property located along a river bank in a city of 25,000 inhabitants, with railroad facilities readily obtainable. Under the authorities it is clear that this property has a market value for the most profitable use to which it is adapted. As to whether its highest and best use was for a meat-packing plant or some other industrial or manufacturing purpose, or for subdivision purposes, the witnesses differ, and the question was therefore properly left to the jury. (*River Park District* v. *Brand,* 327 Ill. 294.) The jury had before it a full description of the property, the use to which it had been put, and the fact that it had remained idle for thirteen years. The jurors heard the testimony of all the witnesses and observed their demeanor on the stand. While none of the witnesses for appellee had sold property similar to the tract in question, they showed that they had had general experience in and about the city of Kankakee in buying and selling real estate and that they knew the gen-

eral trend of values and uses to which property was being put in the community. All the witnesses were competent. The value of their testimony, based on their opportunity for observation and on their intelligence and experience, was a question for the jury. *Chicago and Evanston Railroad Co.* v. *Blake,* 116 Ill. 163.

W. W. Durham, the local agent of appellant, testified that within the past two years George Fortin had made an offer to buy the premises in question as a site for a bulk petroleum products station. He was asked how much he offered, and an objection was sustained to the question. Later he expressed the opinion that the property was worth $7500 and that he based his opinion upon two offers which he had received within the last two years, the one by Fortin and another by George H. Drummond, who conducts a rendering works immediately south of the Heidenreich property. He submitted the offers to appellant but received no definite reply. Drummond testified that he offered $6000 for the premises in 1923, and that if he could be assured that the park district would not seek to condemn the property he would now give $7500 for it. Appellant contends that the court erred when it refused to permit Durham to testify directly to the amount offered by Fortin.

There is much conflict among the authorities upon the question of the admission of collateral evidence of values. As a general rule, where there is a definite market value established by daily trading in a commodity that value should be taken as the basis for estimating compensation, but where there is no established standard by which market value can be determined then the best evidence available must be used. Because of the danger of confusing the issues, and of the difficulty of limiting sales of other property to property similar in character and offers to *bona fide* offers, many courts have rejected evidence of actual sales of other lands in the neighborhood and evidence of recent offers that have been made for the land in question. (1 Jones

on Evidence,—1913 ed.—sec. 168; 1 Elliott on Evidence, sec. 180.) This court has, however, adopted the rule admitting in condemnation cases evidence of voluntary sales of similar lands in the vicinity made at or about the time of the taking, (*Sanitary District* v. *Boening,* 267 Ill. 118; *Peoria Gas Light Co.* v. *Peoria Terminal Railway Co.* 146 id. 372;) and recent *bona fide* offers for the property involved made by persons able to buy. (*City of Chicago* v. *Lehmann,* 262 Ill. 468; *Johnson* v. *Freeport and Mississippi River Railway Co.* 111 id. 413.) Since value is a money estimate of a marketable article possessing certain definable qualities, the value of other marketable articles possessing substantially similar qualities and the value placed on the article in question by buyers ready, able and willing to buy and familiar with values, are strongly evidential and are so treated in commercial life. Evidence of what has been paid for similar property in the vicinity at sales made in an open market at or about the time of the taking of the land involved, and what has actually been offered for the property involved by one of good judgment and able to buy, is as valuable to the jury in determining the actual market value of the land involved as the opinions of witnesses. When in a particular instance the disadvantage arising from a confusion of issues will not be compensated by the assistance of certain useful evidence the trial court should exclude the evidence. Evidence otherwise relevant and useful ought not to be excluded under a universal rule when there is at hand the expedient of leaving it to the discretion of the trial court to draw a line of exclusion whenever the evil of confusion of issues impends. (1 Wigmore on Evidence,—2d ed.—sec. 444.) Other courts admit proof of *bona fide* offers for property on the theory that they afford some test as to value. (*Muller* v. *Southern Pacific Branch Railway Co.* 83 Cal. 240, 23 Pac. 265; *Faust* v. *Hosford,* 119 Iowa, 97, 93 N. W. 58; *Fox* v. *Baltimore and Ohio Railroad Co.* 34 W. Va. 466, 12 S. E. 757.) The general

statement to the contrary made in *Crosby* v. *Dorward,* 248
Ill. 471, has, in effect, been overruled by later decisions.
(*Sanitary District* v. *Boening, supra; City of Chicago* v.
*Lehmann, supra.*) It is incumbent on the party offering
proof of sales of other lands to show, as a foundation for
its admissibility, that the lands sold were similar in local-
ity, quality, character and usefulness to the lands in ques-
tion and that the sales were recently made and under cir-
cumstances indicating that they were sold freely in the open
market, (*O'Hare* v. *Chicago, Madison and Northern Rail-
road Co.* 139 Ill. 151,) and in the case of evidence of an
offer made for the lands in question the *bona fides* of the
offer is a preliminary question which must be decided by
the court. Where it does not appear that the offer was
made in good faith or that the sales of other property were
made under circumstances which show that they were sales
on the general market, the evidence of the offer or the
sales should not be received. (*Chicago and State Line
Railway Co.* v. *Mines,* 221 Ill. 448; *Sanitary District* v.
*Baumbach,* 270 id. 128.) The question whether the evi-
dence should be admitted is one involving the discretion of
the trial court, and the decision of the court on the prelimi-
nary question will not be disturbed unless it is manifestly
against the weight of the evidence. (*Aledo Terminal Rail-
way Co.* v. *Butler,* 246 Ill. 406; *St. Louis and Illinois Belt
Railway* v. *Guswelle,* 236 id. 214.) After the evidence has
been admitted by the court, then special circumstances at-
tending the offer or the sale which might have influenced
the price may be considered by the jury in determining the
weight to be given such evidence in fixing the value of the
land in question. Appellant did not establish a sufficient
foundation for the admissibility of the evidence offered by
him and the court did not err in refusing to receive it.

The fifth instruction given on behalf of appellee reads
as follows:

"The court instructs the jury that in determining the value of the land in controversy they are permitted to exercise, in weighing the evidence, their individual judgment as to values upon subjects within their knowledge which they have acquired through experience and observation." The sixth instruction also contains the statement that the jury "have the right to use their own knowledge of the values of land gained through experience and observation, and that from a consideration of the testimony of witnesses, their view of the premises and their own experience and knowledge of land values, they should endeavor to arrive at the fair cash market value of the land sought to be condemned on the day in which the petition in these proceedings was filed." The contention is that the instructions permit the jury to fix the fair cash market value of the land sought to be taken upon their own experience and knowledge of land values and do not confine them to the evidence produced in court. The instructions are inartificially drawn but the jury could not have been confused by them. The instructions in effect told the jury that in weighing the evidence they should apply to it the knowledge which they had gained through experience and observation. This was correct. *Green* v. *City of Chicago,* 97 Ill. 370; *Head* v. *Hargrave,* 105 U. S. 45.

It is finally contended that the court erred in giving instructions which in effect told the jury that they might consider their view of the premises in connection with other evidence in determining the proper amount of damages to be allowed. This complaint is without merit. *River Park District* v. *Brand, supra; City of Chicago* v. *Lord,* 276 Ill. 544; *Rock Island and Peoria Railway Co.* v. *Leisy Brewing Co.* 174 id. 547; *Kiernan* v. *Chicago, Santa Fe and California Railway Co.* 123 id. 188; 2 Wigmore on Evidence, (2d ed.) sec. 1168.

Other errors have been assigned and argued but if sustained they would not be sufficiently serious to justify a

reversal of this judgment. The testimony of appellant was so unreasonable that it is not worthy of credit. Seven disinterested witnesses testified this property was reasonably worth approximately $2500, and two interested witnesses fixed the value at $7500. The jurors, who had the advantage of a view of these premises and of hearing and seeing the witnesses testify, have fixed the value of the premises at $4000. This verdict seems to be in accordance with the evidence and no prejudicial error occurred on the trial. The judgment is therefore affirmed.

*Judgment affirmed.*