(No. 21069.—)

THE FOREST PRESERVE DISTRICT OF COOK COUNTY, Appellee, *vs.* CLARA G. E. COLLINS, Appellant.

*Opinion filed April 23, 1932—Rehearing denied June 8, 1932.*

BECKMAN, TODD, HOUGH & WOODS, (CHARLES F. HOUGH, and JOHN W. BROWNING, of counsel,) for appellant.

GEORGE A. BASTA, SPITZ & ROOKS, and POPPENHUSEN, JOHNSTON, THOMPSON & COLE, (FLOYD E. THOMPSON, and IRVIN ROOKS, of counsel,) for appellee.

Mr. COMMISSIONER PARTLOW reported this opinion:

On April 24, 1930, appellee, the Forest Preserve District of Cook county, filed its petition in the superior court of Cook county against appellant, Clara G. E. Collins, to condemn her one-fourth interest in 288 acres of land in Cook county, the other three-fourths interest in said land being owned by appellee. The cause was tried in April, 1931, by a jury, which heard the evidence and viewed the premises and rendered a verdict fixing the value of the one-fourth interest of appellant in the land at $43,200. From the judgment rendered on the verdict appellant has appealed.

The land is about fourteen or fifteen miles southwest of Chicago and is along the line of suburban development which follows the Chicago, Burlington and Quincy railroad. Practically all of the land in its immediate neighborhood available for residence purposes has been subdivided. This land lies next in the line of such development, and the wit-

nesses for both parties agree that its highest and best use is for subdivision and development for residence purposes. The village of LaGrange Park lies east of the tract, and the developed portion of that village is separated from this tract by land of appellee to the north and land of the St. Joseph Academy to the south. The village of Western Springs lies to the south of the west half of the southern boundary of the tract and the village of Western Heights is along its north boundary. The tract is separated from the village of Western Springs by Ogden avenue extended, and from Western Heights by a country road known as Thirty-first street. Wolf road extends north and south along its western boundary. There is no road along the eastern boundary. The land is not within the corporate limits of any municipal organization, but any one of these three villages might annex it. There are a great many vacant residence lots in these three villages. The tract is partly wooded. Salt creek runs in an easterly and westerly direction through the center, and along the creek is some low land which could be used for park purposes. All of the witnesses who testified as to the value of the land were real estate men. Seven witnesses who testified for appellee fixed its value from $500 to $600 per acre. Six witnesses who testified for appellant fixed its value from $3000 to $4000 per acre. The jury fixed its value at $600 per acre.

Appellant insists that the court improperly excluded evidence relative to the sale of a piece of land in the immediate neighborhood known as the Harmon land. The rule is that evidence of the voluntary sale of land in the vicinity, similarly situated, about the time of the transaction in question, is admissible to aid in estimating the value of the land sought to be taken, but the party offering the proof must first show that the land so sold is similar in locality and character to the land sought to be acquired. No positive rule can be laid down as to the degree of similarity or

the nearness of time and distance required to make such sale competent as evidence. These are matters which rest largely within the sound discretion of the trial court. *Forest Preserve District v. Chilvers,* 344 Ill. 573; *Chicago North Shore and Milwaukee Railroad Co.* v. *Chicago Title and Trust Co.* 328 id. 610; *Forest Preserve District* v. *Caraher,* 299 id. 11; *City of Chicago* v. *Mullin,* 285 id. 296; *St. Louis and Illinois Belt Railway* v. *Guswelle,* 236 id. 214.

Appellee insists that this evidence was not admissible because the consideration expressed in the contract of sale for the Harmon tract was hearsay; that the Harmon tract was within the corporate limits of the village of LaGrange Park and the land in question was not within the corporate limits of a village; that the Harmon land had better transportation facilities than the tract sought to be condemned; that the Harmon land contained a golf course and was in this respect not similar to the land in question, and that to permit evidence of the sale of property not similar would involve a collateral issue and thus confuse the jury. There is no merit in any of these contentions. The evidence shows that the Harmon tract consisted of 80 acres, a quarter of a mile east of the property in question. The south boundary of the Harmon property is Ogden avenue, which is the south boundary of the land in question. The Harmon tract is separated from the land in question by land owned by appellee and by land owned by the St. Joseph Academy. The Harmon tract extends north about one-half mile and has some low spots on it. It has no improvements of any value. At the time the Harmon land was purchased there were very few, if any, homes to the south of it. The property was purchased for the Harmon Company, which subdivided and improved it for residence purposes. The purchase price was $300,000, or $3750 an acre, payable one-half in cash before the delivery of the deed and the other half over a period of years. The witness Blankley testified that he saw the money paid at the

time the deed was delivered. The cash consideration was more than three times the price per acre awarded by the jury in this case. The contract of sale for the Harmon land was by parties who desired to buy. The fact that the Harmon land was within the corporate limits of a village did not destroy its similarity to the land in question. The evidence does not show that the difference in transportation facilities was sufficient to make any marked distinction in the two pieces of land. There is one ground, however, upon which the court properly excluded the evidence as to the sale price of the Harmon land. The contract of sale of the Harmon land was made on January 24, 1925. The petition to condemn the land in question was filed on April 24, 1930. The evidence shows that during this period of over five years there was a big decline in the price of acreage property in this vicinity. It has been held that land sold within or after five years may be proved in order to establish the value of the land sought to be condemned, but this is upon the theory that there has been no great change in price during that period. The evidence also shows that in 1925, when the Harmon land was sold, there was considerable demand for acreage property for subdivision purposes at a good price, that since that time the demand has gradually decreased, and that in 1930 there was very little demand for property of that kind and prices have correspondingly decreased. For this reason the court properly excluded the evidence offered by appellant relative to the sale price of the Harmon land.

Appellant offered evidence of a civil engineer as to the cost of constructing sewers and water mains on the land sought to be condemned. This evidence was excluded, and this ruling is assigned as error. It is not contended that the evidence was admissible in the first instance, but it is insisted that on account of the manner in which the case was tried the jury may have received the impression that the cost of improving the property was excessive, and to remove

this impression the evidence should have been admitted. This contention is not sustained by the evidence. The evidence shows that a main sewer crosses the property and that water and gas mains are in the streets bounding it. The question as to whether it was feasible to improve the land for residence purposes was not in issue. There was no conflict in the evidence on that point. The cost of water mains and sewers would depend upon the plan of subdivision adopted. There was no issue as to the relative cost of various systems of sewerage and water-supply pipes. If the evidence had been admitted the issue would then have been raised as to whether the system designed was suitable for any subdivision which might be made of the property. Any sewer and water main which might be put in would have to be put in to serve the entire 288 acres. The evidence was not necessary to remove any erroneous impression which the jury may have had relative to the cost of subdividing the land. The evidence was properly excluded.

Appellant insists that the court erred in allowing witnesses for appellee to testify as to the relative value of an undivided interest in the premises sought to be condemned, and that appellee predicated its case upon the theory that the value of the interest of appellant was depreciated to a considerable extent by reason of the fact that she owned an undivided interest. Appellant was entitled to recover the fair cash market value of her interest in the premises on the day the petition to condemn was filed, in the condition in which the land was at that time, for the highest and best purpose for which such land might be used. (*City of Chicago* v. *Lord,* 276 Ill. 533; *City of Chicago* v. *Cunnea,* 329 id. 288.) In *Illinois, Iowa and Minnesota Railway Co.* v. *Humiston,* 208 Ill. 100, it was held that where one part of land taken is of greater value in connection with the whole than as a separate parcel, the measure of damages is the fair cash market value of the part taken when considered as a part of the whole property. In *Lam-*

*bert* v. *Giffin,* 257 Ill. 152, it was held that where it becomes necessary for the jury to assess damages for separate interests in condemnation proceedings it is the duty of the jury to first fix the fair cash market value of the entire property as between the petitioner and all of the defendants and then divide the same according to the respective rights of the parties. To the same effect are *Chicago, Burlington and Quincy Railroad Co.* v. *Reisch,* 247 Ill. 350, *Chicago and Northwestern Railway Co.* v. *Miller,* 251 id. 58, *Foote* v. *Lorain,* 21 Ohio C. C. 319, and Lewis on Eminent Domain, 1254. Under these authorities, in determining the value of the interest of appellant it was the duty of the jury first to determine the value of the entire tract, and appellant was entitled to one-fourth of that valuation. The evidence shows that every witness who testified for appellee was permitted to testify, without objection from appellant, as to the value of the undivided interest of appellant. Not only was no objection made to this evidence but no motion was made to exclude this evidence after it was given. Most of the witnesses who testified for appellee as to the value of an undivided interest were not even cross-examined on this point by appellant. During the examination of the witness Cossitt he was asked by counsel for appellee whether the fact that appellant owned an undivided interest was considered by him in fixing the value of her share. Appellant objected to this question but not upon the grounds urged upon this appeal. The objection was upon the ground that the question called for speculation and that the form of the question was improper. During the examination of this witness counsel for appellant made the following statement: "It would cost thousands of dollars to divide it," meaning the 288 acres of land. This statement was made after the witness had said that he took into consideration the fact that the land had two owners. Counsel for appellant was the first person connected with the trial to make any statement about the cost of partitioning the land.

The witnesses were cross-examined fully as to the elements which they took into consideration in determining the value of the land and the undivided interest was only one of the many elements. In this condition of the record appellant is in no position to complain that witnesses were permitted to testify to the value of her undivided interest or to urge that its admission constituted reversible error.

The witness Thorsen volunteered the statement that a tract of 177 acres at Seventy-first street and Willow Springs road was sold for $53,000. This statement was stricken on motion of appellant. The witness Frye testified that he knew of a 15-acre tract which could be purchased for $1000 an acre. We find no objection in the abstract to the evidence of this last witness. These were the only tracts upon which values were placed. Appellant insists that the admission of this evidence was error, and that, even though the statements of value were withdrawn, the damage had been done and a new trial should be granted because of these statements. The abstract not only does not show any objection by appellant to the evidence of Frye, but it shows that the evidence was given on cross-examination by counsel for appellant and was in response to a question put to the witness. The evidence of Thorsen was properly excluded as to the price for which the land was sold and no further reference was made to it. There was no prejudicial error in these respects.

Appellant insists that the verdict is too low, and that it was the result of confusion, prejudice and passion of the jury. In cases of this kind, where the evidence is conflicting and the verdict is within the range of the testimony, courts will not interfere with the finding of the jury as to the amount of damages unless there is something in the record showing that they were influenced by passion or prejudice or that there has been some incorrect ruling which might have misled the jury. (*City of Chicago* v. *McGowan,* 324 Ill. 164; *Forest Preserve District* v. *Barchard,* 293 id.

556.) The jury viewed the premises and saw the witnesses who testified and they were better able to weigh the evidence than is this court. The evidence is in conflict but the verdict is within the range of the evidence. There is no substantial error in the admission or exclusion of evidence and no complaint is made as to the instructions. In *Pullman Co.* v. *City of Chicago,* 224 Ill. 248, the witnesses for the city fixed the value of the land at $14,250, while the witnesses for the company fixed its value at $40,000, $40,900 and $42,750. The jury viewed the premises and returned a verdict for $14,250. In affirming the judgment this court said: "In our judgment the jury were warranted in finding a verdict in accordance with the testimony of the witnesses for appellee. The jury viewed the premises, the evidence was conflicting, the verdict was within the range of value as testified to on the trial, and it does not appear to have been the result of passion, undue influence or other improper cause, and it should not be disturbed, therefore, on the ground of inadequacy." In *Forest Preserve District* v. *Wallace,* 299 Ill. 476, 33.39 acres were involved. The witnesses for the petitioner placed the value at $1000 an acre and the witnesses for the owner placed it at $2500 an acre. The jury returned a verdict for $33,000. Several complaints were made as to the ruling of the court and this court expressed some doubt as to the correctness of some of them, but it was held that the errors, if any, were harmless and the judgment was affirmed. In *River Park District* v. *Brand,* 327 Ill. 294, and *Jefferson Park District* v. *Sowinski,* 336 id. 390, the jury accepted at full value the opinions of the witnesses for the petitioner and rejected the opinions of higher values expressed by the witnesses for the owner. In both cases this court affirmed the judgments. There is a wide range of difference in the opinions of the witnesses in this case as to the value of the property, but when we take into consideration the evidence with reference to the deflated values of real estate at the time the petition was

filed, as shown by the evidence, we cannot say that the verdict is contrary to the evidence.

We find no reversible error and the judgment is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*