(No. 50661.—)

THE PEOPLE *ex rel.* THE DIRECTOR OF FINANCE, Appellee, v. YOUNG WOMEN'S CHRISTIAN AS-SOCIATION OF SPRINGFIELD *et al.*, Appellants.

*Opinion filed Jan. 26, 1979.—Rehearing denied March 30, 1979.*

MORAN, J., dissenting.

Barber & Barber, of Springfield (Henry R. Barber, Carl O. Hoffee, and Richard C. Edwards, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield (Roy E. Frazier, Jr., Assistant Attorney General, and Raymond L. Terrell, Special Assistant Attorney General, of counsel), for the People.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This is a condemnation action. The case is here on a certificate of importance from the Appellate Court, Fourth District (59 Ill. App. 3d 39), which reversed an order of the circuit court of Sangamon County denying a motion *in limine* by the State, petitioner for condemnation in this action. The appellate court also remanded the cause to the circuit court with directions, but no two of the three members of the appellate court panel were able to concur as to what the directions should be. Remaining members of the district had recused themselves, so the case could not be submitted to a new panel. Realizing that its mandate would cause the circuit court difficulty, the appellate court issued a certificate of importance, granting the condemnee, Young Women's Christian Association of Springfield (YWCA), the right to appeal to this court as a matter of right (see Ill. Const. 1970, art. VI, sec. 4(c)).

The action was commenced by petition of the State to condemn land and a building owned by the condemnee in Springfield. The Capital Development Board of the State of Illinois, on whose behalf the petition was filed, is acquiring the necessary property rights for construction of a courts complex in Springfield on the block bounded by Capitol Avenue on the north, Jackson Street to the south, Fifth Street on the east, and Fourth Street on the west.

In the preliminary stages of the proceedings in the circuit court, the State filed a motion *in limine,* the purpose of which was to prohibit the condemnee from introducing evidence of replacement or reconstruction costs. Such evidence would be relevant if the building to be condemned were designated as special-use property. The basis of the State's motion was that the building was not such special-use property, that the circuit court's inquiry therefore should be directed to a determination of

the fair market value of the building, and that the evidence should be limited accordingly. The condemnee urged that the cost of substitute facilities should control.

The circuit court ruled that the condemnee is entitled to compensation measured by the cost of substitute facilities. Under the ruling, depreciation of the condemned building would not be considered. In anticipation of an interlocutory appeal under Rule 308 (58 Ill. 2d R. 308), which was eventually allowed, the circuit court certified three questions to the appellate court:

> "(1) Whether, under the evidence given at the hearing on the Motion and Answer thereto, the use and ownership of the property are such that the just compensation to be awarded for the taking of said property is the fair cash market value of the property at its highest and best use on the date of the filing of the Petition, or whether the fair cash market value is not the legal standard for determining just compensation because the property is of such nature and applied to such special use that it cannot have market value.
>
> (2) Assuming that the property in question is of such a nature and applied to such special use that it cannot have a market value, whether the proper standard for determining just compensation is substitute facilities cost without regard to depreciation.
>
> (3) Assuming that the property is subject to the special use rule and assuming that depreciation is not a proper factor to be considered in determining just compensation, whether the cost of substitute facilities should be based on cost of reproducing the existing facilities." 59 Ill. App. 3d 39, 40.

The three members of the appellate court panel expressed varying opinions on these questions. Mr. Justice Webber felt that the condemned building was not of the special-use type, that fair market value should control as to both the land and building, and that the circuit court judgment therefore should be reversed and the cause remanded. Mr. Presiding Justice Green agreed to reverse and remand, but felt that fair market value would not

adequately compensate the condemnee because of what he believed to be unique improvements made upon the building. He favored instead a measure of damages whereby the condemnee would receive fair market value for the land and, for the building, the cost of reproduction "minus the percentage of that cost determined to be the percentage of depreciation of the existing building." (59 Ill. App. 3d 39, 47.) Mr. Justice Trapp voted to affirm the circuit court's determination that the building was of a special use, that the cost of substitute facilities should control, and that depreciation should not be considered. He also expressed the view that the cost of replacing the existing building should not be the measure of compensation.

In its brief and argument in this court, the condemnee asks us to affirm the judgment of the circuit court and hold that the correct measure of compensation is the cost of substitute facilities. The State contends that fair market value should control or, alternatively, reproduction cost minus depreciation. The condemnee also argues that the appellate court should have affirmed the circuit court's judgment because a majority of the members of the appellate court panel could not reach a decision on the issues presented. We address the latter, procedural question first because we find that it carries jurisdictional implications.

Section 5 of the judiciary article of our constitution provides that a majority of an appellate court division is necessary for a decision (Ill. Const. 1970, art. VI, sec. 5). The reference to "division" of the appellate court must be interpreted as meaning "panel," traditionally consisting of three judges, since only three judges usually consider each case. (See 58 Ill. 2d R. 22.) Nonetheless, the votes of two of three judges are required for a decision, and this majority was not reached in this case on the vital issue of what the measure of compensation should be. A similar

provision applies to judges of the supreme court, and in *Perlman v. First National Bank* (1975), 60 Ill. 2d 529, we held that an appeal should be dismissed when we are unable to obtain the constitutionally required majority vote. We pointed out that the effect of such a dismissal is the same as affirmance by an equally divided court of the decision under review. It is a conclusive determination of the controversy, but is of no precedential value (60 Ill. 2d 529, 530). Relying on *Perlman,* the condemnee contends that the appellate court should have affirmed the judgment of the circuit court.

We agree that the appellate court should have affirmed the judgment of the circuit court and, in the exercise of our supervisory authority (see Ill. Const. 1970, art. VI, sec. 16), we direct the appellate court to affirm the judgments of the circuit court if again presented with this situation in which an appellate court panel cannot obtain the constitutionally required majority. Under *Perlman* the decision would have no precedential value. The appellate court's failure to follow this course in the present case would cause us no difficulty were it not for the fact that the case is here on a certificate of importance, and the issuance of such a certificate presupposes a decision by the appellate court (Ill. Const. 1970, art. VI, sec. 4(c)). Because there was no decision by the appellate court in this case, a certificate of importance could not properly be issued. We do not feel, however, that this formal defect is fatal to our jurisdiction over the matter, as we choose to consider the brief of the State as a motion for direct appeal from the judgment of the circuit court (see 58 Ill. 2d R. 302(b)), allow the motion, and proceed to the merits.

The substantive issue in this appeal concerns the measure of value to be used in determining compensation to which the condemnee is entitled for the taking of its property in Springfield.

The building in question is a four-story brick structure

built in 1913 and rehabilitated in 1950. The building includes an indoor swimming pool, gymnasium, locker rooms, chapel, meeting room and three kitchens. It has a high floor-loading capacity which allows any room to be used for various purposes. The rooms are also said to be "expandable."

According to the testimony of Richard Stockbarger, an architect and president of the board of trustees of the YWCA, the building was specially designed for the YWCA and well adapted for its programs. To a similar effect is the affidavit of Earl C. Worthington, the architect responsible for the 1950 rehabilitation of the building. The basis of the testimony of Stockbarger, who as an architect is experienced in the design of similar structures such as school buildings, was his examination of the building plans, the high floor-loading capacity of the building, and improvements such as the pool and gymnasium. Mr. Stockbarger also testified that a regular maintenance program was in effect, and that the building is in as good a condition as it was following its rehabilitation in 1950, but that there may have been 10 to 15% depreciation. When asked for his opinion of the useful life of the structure, he stated that it would be adequate for the needs of the YWCA for at least 100 years.

The circuit court also heard the testimony of Carolyn Coffman, executive director of the Springfield YWCA. Mrs. Coffman has 14 years of experience with the YWCA organization, including 5 years with the Springfield chapter, and has visited and become familiar with the organization's buildings across the nation, particularly in Illinois and Indiana. She testified that she knew of no open market sale of a structure similar to that owned by the Springfield YWCA. It is because of this alleged absence of a market that the YWCA contends that fair market value is an inadequate measure of compensation.

Mrs. Coffman also testified that membership in the

Springfield YWCA is now at least 50% greater than in 1950, but that careful planning and space allocation have enabled the directors to quite adequately accommodate its programs. She further testified that any new building, if constructed, would be sufficient if it contained similar facilities, and said, "We'd be very happy if they [the State] would build us another building exactly like it." She was of the opinion that compensation in an amount less than the cost of substitute facilities would jeopardize the YWCA functions. According to an estimate received from the Evans Construction Company, the construction cost of substitute facilities is $1,611,000. The cost of land, architect's fees, and other expenses is not included. The State, presumably relying on its fair market value theory, has offered $650,000 for the land and building.

In the usual case, fair market value is a legally sufficient measure of compensation. This has been recognized by both the legislature and the courts. Our condemnation statute provides:

> "Except as to property designated as possessing a special use, the fair cash market value of property in a proceeding in eminent domain shall be the amount of money which a purchaser, willing but not obligated to buy the property, would pay to an owner willing but not obliged to sell in a voluntary sale, which such amount of money shall be determined and ascertained as of the date of filing the petition to condemn. ***" (Ill. Rev. Stat. 1975, ch. 47, par. 9.7.)

Few Illinois cases have found condemned properties to be of a special use and it has been said that such a finding is proper "only when property has special capabilities which make it unmarketable at its true value due to unique improvements ***." (*Housing Authority v. Kosydor* (1959), 17 Ill. 2d 602, 606; see also *Peoples Gas Light & Coke Co. v. Buckles* (1962), 24 Ill. 2d 520, 531-32.) In *Lake Shore & Michigan Southern Ry. Co. v. Chicago & Western Indiana R.R. Co.* (1881), 100 Ill. 21, 33, for

example, the court found a railroad transfer station to be of a special use and held that a special use designation is proper when the property in question is "not available for use for general and ordinary purposes" and has no "market value as such property."

Our consideration of the present case leads us to conclude that the property of the condemnee is not of a special use. We do not believe that the improvements to the building are of such a unique nature as to render use of the fair market standard unjust or determination of market value impossible. The State has pointed out accurately that various buildings have improvements such as a swimming pool, gymnasium and meeting rooms. Evidence of open market cash sales of buildings with such similar improvements may be used to establish fair market value of the property of the condemnee, provided, of course, that the State first establish similarity in material respects, such as locality, character, time, proximity, market conditions, improvements, and mode of payment, which should be cash. (*Forest Preserve District v. Lehmann Estate, Inc.* (1944), 388 Ill. 416, 428-29; *Forest Preserve District v. Collins* (1932), 348 Ill. 477, 479-80, 481; *Forest Preserve District v. Barchard* (1920), 293 Ill. 556, 563; see, *e.g., City of Chicago v. Harbecke* (1951), 409 Ill. 425, 430-32 (proximity; character); *Forest Preserve District v. Lehmann Estate, Inc.* (1944), 388 Ill. 416, 427-29 (proximity); *Forest Preserve District v. Draper* (1944), 387 Ill. 149, 156-57 (character; improvements); *Forest Preserve District v. Kean* (1921), 298 Ill. 37, 47-49 (proximity; market conditions).) Evidence should not be excluded because of minor differences, however, if the trial judge determines that that the evidence would assist the jury. (*Forest Preserve District v. Draper* (1944), 387 Ill. 149, 156-57; *Forest Preserve District v. Barchard* (1920), 293 Ill. 556, 563.) Differences, of course, may be emphasized and explained to the jury. These matters are to be resolved

by the trial judge in the exercise of his sound discretion. (*Forest Preserve District v. Kean* (1921), 298 Ill. 37, 48.) We note, too, that other methods of proof may be utilized if it is determined that they are applicable. (See Note, *Methods of Establishing "Just Compensation" in Eminent Domain Proceedings in Illinois: A Symposium*, 1957 U. Ill. L.F. 289, 291-95.) This court has approved of various methods of valuation if the proper circumstances are present. (See, *e.g., Department of Transportation v. Quincy Coach House, Inc.* (1976), 64 Ill. 2d 350, 360-61.) We express no view on the applicability of any other valuation method, but merely point out that they may be appropriate.

Our belief that the property in question is not of a special use is also confirmed by a comparison of the present case with prior decisions of this court. We do not find that the YWCA building is unique, as were properties labeled "special use" in other cases. (See, *e.g., Sanitary District v. Pittsburgh, Ft. Wayne & Chicago Ry. Co.* (1905), 216 Ill. 575 (railroad terminal); *Chicago & Northwestern Ry. Co. v. Chicago & Evanston Ry. Co.* (1884), 112 Ill. 589 (railroad terminal); *Lake Shore & Michigan Southern Ry. Co. v. Chicago & Western Indiana R.R. Co.* (1881), 100 Ill. 21 (railroad terminal); see also *Forest Preserve District v. Hahn* (1930), 341 Ill. 599 (picnic facility and roadhouse not a special use); *Kankakee Park District v. Heidenreich* (1927), 328 Ill. 198 (meat-packing plant not a special use); *River Park District v. Brand* (1927), 327 Ill. 294 (picnic grove and amusement park not a special use); *City of Chicago v. Farwell* (1918), 286 Ill. 415 (soap factory not a special use).) The basis of the railroad cases, for example, is the finding that the terminals were an integral part of the railroad system (see, *e.g., Sanitary District v. Pittsburgh, Ft. Wayne & Chicago Ry. Co.* (1905), 216 Ill. 575, 583; *Chicago & Northwestern Ry. Co. v. Chicago & Evanston Ry. Co.* (1884),

112 Ill. 589, 606-07) or specially adapted to railroad purposes (*Lake Shore & Michigan Southern Ry. Co. v. Chicago & Western Indiana R.R. Co.* (1881), 100 Ill. 21, 33) and therefore of special use to the railroads. We find no such special circumstances present here.

We are also not persuaded by the condemnee's argument that we should adopt the rule set forth in the so-called "Lutheran Synod Cases" (*United States v. 564.54 Acres* (3d Cir. 1978), 576 F.2d 983, and (3d Cir. 1974), 506 F.2d 796). In these cases it was held that the government, as condemnor, is obligated to compensate a condemnee according to the substitute-facilities measure of compensation if the condemnee is a private, non-profit organization and its functions are reasonably necessary to the community. No Illinois case has gone so far (see *County of Cook v. City of Chicago* (1967), 84 Ill. App. 2d 301, 306-07 (public school system entitled to compensation according to substitute facilities measure to ensure replacement of condemned school facilities and fulfillment of legal obligation to the public), and we do not feel that the rule is either sound or constitutionally required. The purpose of the just-compensation provisions of the Federal and Illinois constitutions is to place the condemnee in the same financial condition as if he retained ownership. (*City of Chicago v. Koff* (1930), 341 Ill. 520, 527.) Their purpose is not to improve the condemnee's status (*Department of Public Works & Buildings v. Hubbard* (1936), 363 Ill. 99, 103) as would occur if the substitute-facilities measure were adopted and elements such as market value and depreciation were not primary points of inquiry.

Having determined that the property is not of a special use, we need not address the special use valuation issues raised by the parties. Fair market value will be the measure of damages.

The judgment of the circuit court of Sangamon County is reversed and the cause is remanded to that

court.

*Reversed and remanded.*

MR. JUSTICE MORAN, dissenting:

The trial court, under Rule 308 (58 Ill. 2d R. 308), certified to the appellate court the question of the proper measure of damages in a case before it. Each member of the appellate panel rendered different answers to the question certified, thereby leaving the trial court in a quandary, its problem unresolved.

Article VI, section 5, of the Constitution establishes and sets forth the organization of the Appellate Court of Illinois. Section 5, in part, provides:

"Each Appellate division shall have at least three Judges. *** A majority of a division constitutes a quorum and *the concurrence of a majority of the division is necessary for a decision.*" (Emphasis added.)

Section 4(c) provides, in part, for appeals from the appellate court to this court as a matter of right, "if a division of the Appellate Court certifies that *a case decided by it* involves a question of such importance that the case should be decided by the Supreme Court." (Emphasis added.)

Admitting that the above provisions were not followed, the majority opines "that this formal defect is [not] fatal to our jurisdiction over the matter." (74 Ill. 2d at 567.) The majority, then, by legal gymnastics, treated the answering brief of the appellee, the State, as a motion for a direct appeal under Rule 302(b) (58 Ill. 2d R. 302(b)). By doing so, the court, despite its admonition, has set an untoward precedent.

It is my feeling that this case should be remanded to the appellate court with the instruction that, before issuing a certificate of importance, that court, in accordance with the constitutional requirement, decide the question presented and that, in the event a majority of the panel is

unable to agree, the judgment of the trial court be affirmed. Either result would allow the aggrieved party to petition this court for leave to appeal.