(No. 13035.—Judgment affirmed.)

THE FOREST PRESERVE DISTRICT OF COOK COUNTY, Appellee, *vs.* JOHN BARCHARD *et al.* Appellants.

*Opinion filed June 16, 1920.*

1. EMINENT DOMAIN—*when an alleged error in limiting cross-examination is harmless.* In a proceeding to condemn part of a farm used for dairying and truck-farming purposes, alleged error in not allowing defendant's counsel to cross-examine petitioner's witnesses for the purpose of showing that the land might be used for road-house, garage or summer-house purposes is harmless, where the defendant, although his own witnesses were permitted to go into the question of automobile travel along the road in front of the property, did not attempt to show by them the value of the land for any other purpose than dairying or truck farming.

2. SAME—*evidence as to value of land not in issue is not admissible.* Inquiry as to value of a piece of land not in issue or being condemned should not be permitted on the hearing in a condemnation proceeding.

3. SAME—*admitting testimony of experts as to sales of other property rests largely in discretion of court.* Admitting testimony of expert witnesses as to sales of other property in the vicinity of that condemned, for the purpose of showing value, rests largely in the discretion of the trial judge, as no general rule can be laid down to definitely fix the degree of similarity of the properties, the nearness in time of the sales and the distance of the properties sold.

4. SAME—*evidence of sales of other property partly on time is admissible.* In a condemnation proceeding, evidence as to sales of other property in the vicinity which were partly on time is admissible if otherwise unobjectionable but only to assist the jury in arriving at a proper conclusion on the cash value of the property condemned.

5. SAME—*when verdict of jury as to value of land will not be disturbed.* Where the evidence as to the value of the property condemned is conflicting and the jury have viewed the premises, the Supreme Court will not interfere with the finding as to the amount of damages unless there is something in the record showing that the jury have been influenced by passion or prejudice in reaching their verdict or that there has been some incorrect ruling of law by the trial court.

APPEAL from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

NING ELEY, (GEORGE A. MASON, of counsel,) for appellants.

ADOLPH D. WEINER, EDWIN K. WALKER, and ROSS C. HALL, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook county authorizing the Forest Preserve District of Cook county to acquire by condemnation about 57 acres of land in said county. The case was tried before a jury, which returned a verdict for $14,820 in favor of the owners of the land taken, or about $260 per acre. From the judgment entered on the verdict this appeal was taken.

The land sought to be taken is a portion of a farm of 110 acres located on both sides of Milwaukee road, about twenty-two miles northwest of Chicago and about two miles south of the village of Wheeling, in Cook county. All of the buildings and improvements on the original farm were located on the west side of Milwaukee road, and hence none of them were condemned, as all of the land sought to be taken lies on the east side of said road. About 30 acres of the land is under cultivation and the remaining portion sought to be taken is largely river bottom, covered partially with timber, and has been used for pasture, and a part of it is the bed of the Desplaines river, which runs in an irregular but generally a southeasterly direction across the land, and a portion of the land lies east of the river. The land bordering the river on both sides is shown to be subject to the annual spring overflow, and there is some evidence tending to show that both the cultivated and the pasture portions are sometimes overflowed in the spring season and that some years a large part of the land has been flooded. The evidence also tends to show that the land in question had been used in recent years for dairy,

general farm or truck-farming purposes. George Proessel testified he had been a tenant on the farm for four years prior to the time of the trial, in 1919; that in March, 1918, he bought 20 acres just north and adjoining the land here in question, and west of Milwaukee road, for $6000; that the buildings on the purchased property were worth $1500; that deducting the value of the buildings from the price paid would give the net price of $225 per acre for the land he had purchased; that all of the land he purchased was under cultivation and none of it was subject to overflow. Frank Bartman testified that he formerly owned the 20-acre tract sold to Proessel just referred to; that he had bought this, with about 80 acres of land immediately adjoining on the north, a few years before for an amount which, deducting the value of the improvements, would leave the price of the land $207 an acre; that the land was all under cultivation. William Hamer, a farmer living in the same township, about a half mile north of the land here in question, testified that in 1914 he bought 90 acres of improved land at $123 per acre, deducting the fair price of the buildings. Petitioner offered nine witnesses, five of them farmers, including the ones already referred to, who lived in the immediate neighborhood of the land, who testified to actual sales of property and the situation and character of the land so purchased, and that the prices varied all the way from $123 to $320 an acre. Several opinion or expert witnesses testified for petitioner, who valued the land here in question at prices ranging from $200 to $225 an acre. Several witnesses testified for the property owners, some of them farmers living in the vicinity of the land and some of them engaged in real estate business in Chicago or adjacent municipalities. Some of these witnesses for the land owners testified as to one or two sales, within a few years of the date of this sale, of land near this property, but the land so sold appears to have had buildings and improvements thereon and no tes-

timony was offered to show what the buildings and improvements were worth, therefore it was impossible for the jury to say just what such land, without the improvements, sold for. Most of these witnesses gave opinion evidence as to the value of the land averaging approximately $500 or more, some of them giving it as their opinion that the land was worth from $500 to $550. There was also evidence given on behalf of the land owners that paving Milwaukee road, which is a continuation of Milwaukee avenue in the city of Chicago, has greatly improved the travel facilities to this vicinity in recent years, a large part of it having been covered with a concrete surface; that this improvement of the road had greatly increased the value of the adjoining land.

The jury visited the land in question before the hearing of the evidence in the circuit court, and there can be no question that their verdict is clearly within the range of the testimony offered on the hearing. Counsel for appellants concede this, but argue that the rulings of the court as to the admission and rejection of evidence and as to the giving and refusal of instructions, and in other respects, are of such a nature as to require a reversal of the case.

Counsel for appellants argue that the court erred in rejecting the evidence offered by them tending to show that the property was valuable for purposes other than dairying, general farming or truck farming. They concede that one of the counsel for appellants in his opening statement to the jury practically stated that the highest and best cash value of the property at the date the petition was filed, and the best use to which the property could be put, was for dairy and truck-farming purposes. The trial judge clearly understood that at the time these statements were made the parties were attempting to stipulate as to the questions upon which evidence should be heard, and later, near the close of petitioner's evidence, when counsel for appellants, on cross-examination, were attempting to bring out

evidence showing that the property was adapted for garage, service station, restaurant, hotel and business uses,—particularly that part of the property fronting directly on Milwaukee road,—the court refused to permit such evidence to be introduced. This question was first raised on cross-examination of the petitioner's expert witness Snow, when he was asked if he ever counted the number of machines on Milwaukee road passing a given point by the farm in question on Sunday afternoon. Objection to this question was sustained, the court at first stating that the basis of the ruling was that he understood that there was a stipulation at the opening of the trial that the owners of the property only wanted to prove that the highest and best use was for dairy, farming or truck-farming purposes. After a somewhat lengthy discussion the court finally stated that if counsel for appellants thought that the ruling was unduly limiting their rights in the matter they could present the evidence on the question from such witnesses as they desired and he would rule upon it when the questions were asked. The objection to witness Snow answering as to the number of automobiles traveling along Milwaukee road on Sunday was sustained. There is merit in the argument that the court might properly have sustained objection to this question on the ground it was not proper cross-examination, but assuming that Snow should have been permitted to answer this question we cannot see how it injured appellants in any way, because later, when appellants were introducing their testimony, they were permitted to go fully into the question of the automobile travel along the road in front of this property and as to what kinds of business and improvements were located on property in the vicinity. As we read the record, counsel for appellants by no witness of their own attempted to show the value of the particular land here in question for any other purpose than dairy, farm or truck-farming purposes. It is true that one of their witnesses, Allison, who a few years before had sold part of

his land about half a mile south of the land in question for a road-house called the "House that Jack Built," was asked what the value of the land he had sold was for pasture land. He was not asked how much he sold the land for. Under settled decisions of this court an inquiry as to the value of a piece of land not in issue or being condemned should not be permitted on the hearing. (*Sanitary District* v. *Corneau,* 257 Ill. 93, and cases cited.) As counsel for appellants did not present or question any witness as to the value of this land for road-house, garage, service station or summer-house purposes, we cannot see how appellants were injured in any way by the rulings of the court with reference to limiting the testimony or how they are in any position to raise the question on this record. (*Martin* v. *Hertz,* 224 Ill. 84, and cases cited.) Furthermore, we can not see how appellants were injured by the court's stating that he would limit the testimony as to the use to which the property in question on and along Milwaukee road could be put, for the purpose of showing present conditions, but would not permit such testimony to be received for the purpose of showing a special value of the land for other purposes. Appellants were permitted to show all the uses to which the adjacent property in the vicinity was being put, and some of the opinion witnesses who testified as to the value of the property in question evidently based their opinions upon the increased travel facilities caused by the improvement of Milwaukee road, and were permitted, as we have stated, to testify that the land had increased in value to a marked extent in recent years because of the improvement of said road and the building of the improvements along the road.

What is above said also disposes of the argument of counsel for appellants that the court erred in not allowing appellants to show, on cross-examination of certain of petitioner's witnesses, that certain land had increased in

value since the date of sale because of this improvement of the road.

Counsel for appellants also argue that the court in its rulings discriminated against appellants, to their prejudice, in several particulars, particularly in that he refused to permit evidence of the Harper sale because the land was located in the village of Wheeling. The evidence shows that Wheeling is about two miles from this property, containing about 300 inhabitants, and, while the Harper sale was of farm land even though situated in the village, counsel for appellants argue that the court permitted evidence of what witness Utpatel's farm land within the limits of the same village sold for. Counsel for appellee insist that the Utpatel property was not in the village limits, and there is nothing in the record that shows definitely which counsel is correct as to the location of the Utpatel property. Utpatel himself simply testified that he resided in Wheeling, but the record does not show that the property he sold was located within the village limits.

Counsel for appellants also object to the court's refusal to strike out the testimony of Patten, who testified as an expert witness for petitioner, when it was discovered by cross-examination by counsel for appellants that he based his opinion of the value of the land in question on sales of property at least ten miles distant. As to this question and several others raised by appellants concerning the admission or exclusion of the testimony of expert witnesses as to sales of land in the vicinity to prove the value of the property taken, it should be stated that in this State no general rule can be laid down to definitely fix the degree of similarity of the properties, the nearness of time of the sales and the distance of the properties sold. These are matters with which the trial judge is conversant and must rest largely in his discretion. (2 Lewis on Eminent Domain,—3d ed.—sec. 662; *Chicago and Western Indiana Railroad Co.* v. *Heidenreich,* 254 Ill. 231, and cases cited;

*St. Louis and Illinois Belt Railway* v. *Guswelle,* 236 id. 214.
See, also, as to the competency of expert witnesses and opin-
ion evidence, 2 Nichols on Eminent Domain,—2d ed.—
secs. 448-455, inclusive.)    In view of these authorities we
do not think the court erred in its rulings in regard to the
evidence of expert witnesses, as contended by counsel for
appellants.

Counsel further argue that the court was inconsistent in
its rulings on instructions with reference to the sale of land
in the vicinity; that by instruction 8 given for petitioner
it limited the value to actual cash market value while ad-
mitting on the trial evidence of sales that were partly on
time, and that the giving of the instruction in question was
misleading in that regard.    This court has held that sales
which have been partly on time may be admitted in evi-
dence in order to assist the jury in arriving at the fair cash
market value of the land in controversy; (*Dady* v. *Condit,*
209 Ill. 488; *City of Chicago* v. *Mullin,* 285 id. 296;) but
the court said in those cases, that while competent its value
as evidence was for the jury, and it is clear under the
reasoning of those cases that the actual cash value of the
land to be taken is the sole inquiry to be passed upon by
the jury, and that time sales are only given to assist them
in arriving at the right conclusion on the cash value.

Counsel for appellants also argue that the court's criti-
cism of such counsel, frequently made during the trial, was
unnecessary and unjust and tended to prejudice their clients'
interests in the minds of the jury.    While we are of the
opinion that some of the remarks of the court were some-
what pointed, we are forced to the conclusion from the rec-
ord itself that counsel for appellants had so disregarded
their proper attitude towards the court that the court was
justified in its criticism.

Counsel further argue that their clients were unduly
prejudiced by the persistent attempt on the part of petition-
er's counsel and witnesses to under-estimate the land sought

to be taken,—particularly because it was frequently subject to overflow. We cannot see how appellants are in a position to take advantage of this question. The witnesses who testified as to overflow were permitted to be cross-examined as to what occurred as counsel for appellants desired, and the testimony of appellants' own witnesses in that regard was in no way limited. We find no error on this question.

Appellants further argue that the court committed error in the giving and refusing of certain instructions,—particularly those on the question of the adaptability of the land in question for other purposes than dairy or truck farming. What we have already said, we think, fully covers the question, and shows that no errors were committed with reference to the giving and refusing of such instructions.

Counsel for appellants also argue that the court erred in refusing to give instruction 5 offered by them, because their witness Johnson testified that the 57 acres of land were susceptible of being subdivided into five and ten-acre tracts and would then sell for much higher prices than the jury allowed. Counsel for appellee are right in arguing that the refused instruction in question applied to the entire 57 acres, while Johnson's testimony clearly showed that the subdivision into five and ten-acre tracts would be only practicable as to that part abutting on Milwaukee road, and that, if for no other reason, was sufficient justification for the refusal of the instruction.

Other questions are raised by counsel for the appellants which we have considered, and we deem it sufficient to say that as to none of them did the court commit reversible error. In cases of this kind, where the evidence is conflicting and the jury viewed the premises, as they did here, this court will not interfere as to the amount of damages for the property taken unless there is something in the record showing that the jury have been influenced by passion or prejudice in reaching their verdict or that there has been some incorrect ruling of law by the trial court that might

have misled them. (*City of Chicago* v. *Mullin, supra,* and cases there cited.) We find no reversible error in the record. The great weight of the testimony tends to support the verdict as to the fair value of the land taken.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*