LAKE COUNTY FOREST PRESERVE DISTRICT, Plaintiff-Appellee, *v.* RELIANCE STANDARD LIFE INSURANCE COMPANY, Defendant-Appellant.

(No. 73-286;

Second District (2nd Division)—June 9, 1975.

Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago, and Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, for appellant.

Morrison & Nemanich, of Waukegan (Donald T. Morrison, of counsel), for appellee.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

This case arises from a petition filed by plaintiff (District) to condemn for a forest preserve approximately 355 acres of land owned by

defendant (Reliance). A traverse and motion to dismiss the petition was denied and, upon trial, a jury awarded Reliance $1,330,800 as compensation for the taking of the property. Reliance appeals the trial court's order denying its traverse and motion to dismiss, and appeals the amount of the judgment award.

In 1965 and 1968, the District passed ordinances to acquire for a forest preserve property which included the Reliance property. The ordinances authorized negotiating a purchase or instituting condemnation proceedings. No action was taken pursuant to either of these resolutions.

On February 26, 1971, the District made a written proposal to purchase the property for $1,239,000 or $3500 per acre, payable in installments. Reliance rejected this offer on May 21, but agreed to reconsider the offer in 6 months. On July 8, 1971, the District sent a letter notifying Reliance that it intended to pass a resolution at its August 19 meeting to acquire the property by purchase or condemnation and that members of the District were willing to confer with Reliance representatives prior to that time to reach an agreement for its purchase. No conference occurred.

At its August 19 meeting, the District passed a resolution which determined the need to acquire the property and offered to purchase it, for cash or by installment, for $1,239,000 or $3500 per acre. The resolution further provided that if the owner refused to accept, the District would make a final written offer which was to include an invitation to discuss the purchase with the District. Reliance was to be given 30 days after mailing of the final offer in which to accept or reject the invitation to discuss the purchase. The final written offer was also to include notice that, not less than 60 days after the mailing date, the District would begin eminent domain proceedings if agreement could not be reached. Three certified copies of the resolution were forwarded on that same day to Reliance by its agent. The transmittal letter concludes with the following remark: "I sincerely trust we now have a basis for a contract for the sale of your property to the District."

At a meeting on September 22, 1971, the land acquisition committee of the District agreed to send Reliance a registered letter notifying them that condemnation proceedings would be commenced on November 22, 1971. This letter was never sent. However, a meeting with representatives of Reliance and the District was held on October 13, 1971, at which time the District again offered to purchase the property for $3500 an acre. (In a letter dated October 21, 1971, Reliance rejected the District's "offer" of $3500 an acre.) The chairman of the District's land acquisition committee testified that his understanding from this meeting

was that Reliance felt a condemnation proceeding was the best means to determine value of the land in order to protect the interest of the Reliance shareholders. He further testified that, based upon this understanding, the District commenced condemnation proceedings by filing its petition on November 3, 1971.

■■ Reliance first argues that the District did not make a bona fide attempt to agree on compensation, that failure to do so rendered void its action to condemn and that the court therefore erred in not granting the traverse and motion to dismiss. Under section 2 of the Eminent Domain Act, suit can be filed by a condemning party when "the compensation to be paid * * * cannot be agreed upon by the parties interested * * *." (Ill. Rev. Stat. 1971, ch. 47, § 2.) A written offer may constitute a bona fide attempt to agree as required by the Act. (*Village of Deerfield v. Rapka,* 54 Ill.2d 217, 225 (1973); *County Board of School Trustees v. Boram,* 26 Ill.2d 167, 170 (1962); *Illinois State Toll Highway Authority v. Karn,* 9 Ill.App.3d 784, 791 (1973).) In the instant case, there were several attempts to agree, including written offers, the letter of February 26, 1971, the resolution of August 19, and a negotiating session on October 13, 1971. Moreover, Reliance believed an offer had been made as evidence by its letters of May 21, 1971, and October 21, 1971, wherein it rejected the District's "offer." There was sufficient evidence introduced for the court to find that the statutory requirement of an attempt to agree was satisfied. Its conclusion on this issue was not manifestly against the weight of the evidence. *City of Chicago v. Riley,* 16 Ill.2d 257, 261 (1959).

■■ On this same issue, Reliance also contends that because the District failed to satisfy the requirements of the August 19 resolution, it was without authority to file the petition to condemn. We initially note that the petition to condemn, founded upon the resolution, met the statutory jurisdictional requirements in that it (1) recited the District's authority, (2) set forth the purpose for which the property was being sought, (3) described the land to be condemned, (4) named all persons interested in the land as owners, and (5) prayed that just compensation be paid to the owner. (Ill. Rev. Stat. 1971, ch. 47, § 2.) The additional provisions contained in the resolution (reference to a final offer in writing and the lapse of 60 days before filing of the petition) were neither jurisdictional nor required.

■■ While no separate formal letter of "final offer" was sent, three certified copies of the resolution, not required to be served upon Reliance, were forwarded to it on the day the resolution was adopted, 60 days prior to the filing of the petition herein. The resolution itself, in lieu of a separate letter reiterating the contents of the resolution, might

be considered as the final offer and thereby constitute substantial compliance. Under the facts presented, however, we need not base our determination on this factor. The unrebutted evidence is that, subsequent to the adoption of the resolution, at the meeting held on October 13, 1971, Reliance "invited" the condemnation proceeding as a fair means of determining the value of the land for its shareholders. By doing so, Reliance waived the nonjurisdictional provisions of a separate formal letter of final offer and the 60-day interim before filing of the petition.

Reliance claims that the trial court limited its cross-examination of the District's expert witnesses and that it was thereby precluded from impugning the bases for their evaluations of the property. Specifically, it argues that certain of the District's objections should not have been sustained. We have reviewed the record and find that in every instance, irrespective of the sustained objections, Reliance succeeded in placing before the jury, through cross-examination, the evidence it sought to establish. We therefore find no error in this regard.

■■ When the sale of other property is offered for the purpose of comparing it to the property being condemned, the trial court has wide discretion in determining whether the properties are sufficiently similar. (*Department of Business & Economic Development v. Baumann*, 9 Ill. App.3d 1, 8 (1972), *reversed on other grounds*, 56 Ill.2d 382 (1974).) There is no specific rule to determine the degree of similarity necessary for evidence of a sale to be admissible. "Similar" does not mean "identical." Other sales need be only sufficiently similar in character and locality to provide the jury some reasonable basis for comparison. *City of Evanston v. Piotrowicz*, 20 Ill.2d 512, 522 (1960).

■■ Reliance argues that two sales introduced by the District for comparative purposes were dissimilar and therefore should not have been allowed. It pointed out that one of the sales occurred 2¾ years, the other 3 years, prior to the filing of the instant petition and that both were substantially smaller than the subject property. One parcel was adjacent to industrial uses and was characterized by one of the District's appraisers as suitable for homes for "the average workman." Reliance property was not adjacent to industrial uses and the same appraiser estimated that residences on the subject property would range from $60,000 to several hundred thousand dollars. These dissimilarities were declared to the jury. On the other hand, there were similarities among all three properties: they had identical drainage, river frontage, were partially located in the flood plain, and none of the three were subdivided or had any buildings, sewer or water.

"Wherever there is a reasonable basis for comparison between

the property sold and that being condemned, evidence of the sale is not incompetent, and the dissimilarities between the properties, which are declared to the jury, affect the weight and value of the testimony rather than its competency. *Forest Preserve Dist. v. Folta*, 377 Ill. 158; *City of Chicago v. Vaccarro*, 408 Ill. 587." (*City of Evanston v. Piotrowicz*, 20 Ill.2d 512, 522.) We hold that the trial court did not abuse its discretion by admitting into evidence the sales of the two parcels of land.

■■ At the time the petition was filed, the subject property, one-half of which lies within the flood plain area, was zoned 5-acre residential by the county, was located three-quarters of a mile from the village of Libertyville, and was separated from the village by a railroad right-of-way and by the Red Top Farm. It is a settled rule of law that probability of rezoning of land sought to be condemned is a proper factor for consideration by the jury in establishing value. (*Department of Public Works & Buildings v. Rogers*, 39 Ill.2d 109, 113 (1968).) Before a jury may consider evidence founded upon this doctrine, there must be an initial showing that there exists a reasonable probability that the property would be rezoned and that the rezoning would occur within the reasonably near future. (*Lombard Park District v. Chicago Title & Trust Co.*, 103 Ill.App.2d 1, 9 (1968).) Reliance's theory of value, however, was founded upon an extension of this rule thereby raising a collateral issue that must first be resolved.

To justify a higher evaluation than could be obtained under 5-acre zoning, it was essential that Reliance create an issue of reasonable probability of the property being rezoned to a classification allowing a residential use of greater density. Libertyville's zoning ordinance provided the vehicle, but to take advantage of the ordinance, it became necessary for the subject property to be annexed. To reach the zoning issue, without support in Illinois law, Reliance proceeded on the assumption that the doctrine of reasonable probability of rezoning accommodated annexation. To support its theory, Reliance, without the presence of the jury, offered testimony and exhibits in an attempt to establish that, as of the date of the filing of petition, Libertyville would have agreed to annex its property and would also have agreed to rezone the property to a residential use of higher density. The District takes issue with Reliance's assumption and, in support of the judgment, asks that we adopt a rule stating that where offered evidence of value is based upon a reasonable probability of rezoning which, in turn, is based upon a reasonable probability of annexation of property not adjacent to the municipality whose zoning is sought, the evidence offered be excluded as a matter of law. As reasons for adoption of the rule, the District lists

various presumptions that could arise thereby making any evidence as to reasonable probability of annexation "wildly speculative." In reply, Reliance asserts that the District's suggested rule is bottomed on the premise that annexation and rezoning is a two-step procedure, each step being subject to the question of reasonable probability. It then argues that the procedure is but a single step because, by Libertyville's ordinance, all properties annexed automatically are classified as residential 2-acre lots.[1]

The District's suggested rule is too inflexible. Instances may arise where preliminary annexation proceedings, initiated jointly or by either property owners or a municipality, have reached a stage where, under the suggested rule, the filing of a petition to condemn could work an injustice. We therefore decline to adopt a rule that would, as a matter of law, allow such a situation. Further, for reasons later discussed, we find no merit to Reliance's position that reasonable probability of annexation and rezoning is a single-step procedure.

■■  The rationale for the doctrine of reasonable probability of rezoning is that the owner of property being condemned is entitled to just compensation which is measured by the fair cash market value of the property for its highest and best use as of the date of the filing of petition to condemn. The same rationale is equally applicable where an owner is able to establish, at the time of filing the petition, that there was a reasonable probability of annexation in the near future, and further establishes that, upon annexation, there was a reasonable probability of rezoning in the reasonably near future that would conform to the use upon which his valuation is based. On the collateral issue, we conclude that under the above conditions the doctrine of reasonable probability of rezoning may be extended to include the reasonable probability of annexation.

The questions remain: did Reliance meet its burden by establishing, at the time the petition to condemn was filed, that (1) there was a reasonable probability of annexation within the reasonably near future, and (2) there was a reasonable probability that Libertyville would have allowed the rezoning of its property to ¼-acre lots, the basis upon which Reliance's experts formed their evaluation.

Reliance introduced its evidence and argued its case from the standpoint that annexation and rezoning are inseparable. As earlier stated, we disagree with such approach for the simple reason that where a reasonable probability of annexation is not established, there is no need to

---

[1] Libertyville's 2-acre annexation ordinance is irrelevant in this case since Reliance's offered valuation was based upon Libertyville's R-5 (¼ acre) residential use.

proceed further. Therefore, we first consider the evidence as it relates to annexation.

■■ Land value in condemnation proceedings is determined as of the date of filing the petition to condemn; this date also governs evidence offered to substantiate a reasonable probability of rezoning and annexation. The test to be applied to the reasonable probability doctrine is the sufficiency of the evidence when weighed against mere possibility or speculation.

Before the filing of the petition, Libertyville, in 1960, annexed the development known as Cambridge and, in 1971, annexed what is referred to as the Miller Builder development. While other parcels were also annexed, these two parcels were located within a reasonable proximity to the subject property. On December 3, 1970, the village amended its Subdivision Control Ordinance to include a northern portion of the subject property. On October 4, 1971, representatives of Reliance met with the son of the owner of Red Top Farm. The meeting was to explore the possibility of both owners jointly developing their properties and the possibility of annexing to Libertyville. Two witnesses, over the objection of the District, related the gist of the conversation to be that the son found the principle to be of interest. Both witnesses concluded that no agreement was reached. No one from Red Top Farm testified. Also introduced was the fact that on January 27, 1970, a 40-acre tract of the Red Top Farm was sold to Prairie States Land and Cattle Company for $7500 an acre.

Subsequent to the filing of the petition, on February 25, 1972, a joint petition signed by Reliance, Prairie States Land and Cattle Company, and Red Top Farm, was filed with the Village requesting annexation. On March 15, 1972, Libertyville trustees met with the District's land acquisition committee and asked if the District would consider settling for condemnation of part of the area, rather than the whole, and the District refused. A letter from Libertyville to Reliance followed stating that the village would not pursue further discussion as to Reliance's proposed annexation. On January 5, 1973, Libertyville and Red Top Farm joined in a petition filed in the circuit court seeking annexation of the Red Top Farm and the railroad right-of-way to Libertyville.

As revealed by the following analysis, Reliance failed to meet its burden in establishing that there was, on the date of filing the condemnation proceeding, a reasonable probability of annexation.

By statute, the subject property would have to be contiguous to the village in order to be annexed. It therefore became imperative that Reliance at least show that on November 3, 1971, the intervening Red Top Farm and its property was either in the process of being annexed or

that it would in the near future be annexed. The only evidence lending support to this fact was a conversation, a month before the filing of the petition and of questionable admittance, wherein the possibilities of a joint annexation were explored. Reliance argues that the conversation established an intent on the part of Red Top Farm to join with it in annexation. To support this statement, reference is made to the joint petition to annex filed with the village on February 25, 1972. It is also argued that the joint action of Red Top Farm and the village to annex, filed on January 5, 1973, is further evidence toward the reasonable probability that the village would have annexed the subject property. We agree that the subsequent actions add some weight to its theory, but the trial judge was bound to review the evidence available as of the date this suit was commenced. At that point in time, the evidence revealed only the possibility that Red Top Farm would join Reliance in a petition to annex.

The annexation of Cambridge and Miller Builder's tracts over a 10-year span lends no support to Reliance's position. Both tracts were contiguous at the time of annexation; neither were confronted by the same contingencies as those facing Reliance.

By statute, municipalities are allowed to extend limited jurisdiction 1½ miles beyond their limits for the purpose of controlling the types of subdivisions that may be developed. Libertyville's adoption of a controlled subdivision ordinance is no indication that the village intended or would be willing to annex the property covered by the ordinance.

■■ Finally, the fact that Prairie State Land and Cattle Company paid double the price per acre than that offered by the District cannot give rise to the assumption that it did so upon expectation that the property would be annexed to the village. To make this assumption, without other supporting evidence, would be mere speculation.

We conclude that the evidence offered to establish the reasonable probability of the subject property being annexed to Libertyville was insufficient and properly withheld from the jury.

Having reached this conclusion, we need not decide the issue of whether there was a reasonable probability that Libertyville would have allowed ¼-acre zoning, the basis of Reliance's evaluation.

The judgment of the circuit court is affirmed.

Judgment affirmed.

RECHENMACHER, P. J., and DIXON, J., concur.