THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Petitioner-Appellant, *v.* JOHN E. KELLY *et al.*, Defendants.—(AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Trustee, *et al.*, Defendants-Appellees.)

First District (1st Division)    No. 60389

Opinion filed July 26, 1976.

William J. Scott, Attorney General, of Chicago (Leonard W. Golan and Robert C. Thomas, Assistant Attorneys General, of counsel), for appellant.

Thomas T. Burke and Robert J. Weber, both of Chicago, for appellees.

Mr. JUSTICE SIMON delivered the opinion of the court:

99.266 acres in the unincorporated area of Cook County owned by the defendants as co-trustees were taken by two separate condemnation proceedings instituted within a 17-month period by two public bodies, the Department of Public Works of this State (hereafter referred to as the State) and the Forest Preserve District of Cook County (hereafter referred to as the Forest Preserve). The proceeding involved in this appeal was filed by the State on December 26, 1968, to acquire 3.9 acres for the construction of a federally-funded, limited-access expressway (Interstate Highway I-90). The State took title to this parcel on February 21, 1969, under the "Quick Take" provisions of the Illinois Statutes. (Ill.

Rev. Stat. 1967, ch. 47, pars. 2.1-10.) On December 15, 1969, the State amended its petition to increase the amount taken to 4.256 acres, and title to the approximate .356 additional acres was taken by the State under the quick take law on or shortly after the date the amended petition was filed. The defendants filed a cross-petition alleging that the remaining 95.010 acres were damaged by the taking and requesting that damages to the remainder be assessed.

Defendants' 99.266-acre tract was bordered on the south, east and north by property of the Forest Preserve. The east boundary of a portion of the tract was 843 feet from the corporate limits of Elk Grove Village. The west boundary of the defendants' property fronted upon Illinois Route 53, the defendants having 2,075 feet of frontage upon and unrestricted access to that highway. The property condemned in this proceeding included their entire frontage upon Route 53. The property to the west of defendants' was in an unincorporated area; the Village of Schaumburg was further to the west. The construction of Interstate Highway I-90 would eventually have deprived the defendants of access to Illinois route 53, the only means of access to their property. The property was zoned for single-family residence use under the Cook County Zoning Ordinance.

On October 17, 1969, the defendants, Kelly and Tures, sold the 99.266 acres to a land trust of which Lee and Barbara Romano (hereafter referred to as the Romanos) were beneficiaries. This sale for a price of $1,750,000 made the Romanos responsible for the conduct of this proceeding and gave them all amounts paid by the State for the land taken, for damages to the remainder and for any other damages, less $14,560 which was to be a credit to the defendants. Although the Romanos were the party in interest after their purchase, this opinion refers to both the original condemnees and the Romanos as the defendants.

While the State's condemnation proceeding was moving toward trial, the Forest Preserve condemned the entire remainder of 95.010 acres in a separate proceeding instituted on May 7, 1970. An ordinance adopted by the Forest Preserve more than 2 years before the filing of the State's condemnation authorized the acquisition of defendants' property by the Forest Preserve by purchase or condemnation. The Forest Preserve condemnation was tried prior to this proceeding, and a jury returned a verdict in November 1970 for $1,800,000 as just compensation for the 95.010 acres.

This case was tried in March 1971 and a jury returned a verdict of $80,000 as just compensation for the 4.256 acres taken and $2750 for damages to the remainder. The trial court granted defendants' motion for a new trial on two grounds. One was that the State's stipulation received in evidence to mitigate damages by providing access to the remainder

was not shown to have been authorized by the proper State officials. The second was that the court incorrectly instructed the jury with respect to the requirements for annexation of property in unincorporated areas to an adjoining municipality. This instruction was relevant to defendants' contention that there was a reasonable probability of annexing the property to either Elk Grove Village or Schaumburg which would grant rezoning.

Prior to the second trial, the court made several rulings which affected the course of that trial and which the State contends were erroneous. One ruling was that the defendants had shown a reasonable probability of annexation of their property to either Elk Grove Village or Schaumburg and of rezoning after such annexation. This permitted the valuation experts to testify concerning the value of defendants' property including the remainder when rezoned to a density permitting the construction of apartments. The court denied the State's motion to file a third amended petition and to strike defendants' cross-petition for damages to the remainder, the effect of which, had they been granted, would have precluded the defendants from recovering damage to the remainder because the Forest Preserve then owned the remainder. The court ruled that three stipulations of the State to mitigate damages to the remainder by providing alternate access would not be admitted in evidence. The effect of this ruling was to treat the remainder as permanently landlocked for the purpose of the second trial. The trial court also ruled that both evidence of the sale to the Romanos and the amount of the verdict in the Forest Preserve condemnation would be excluded.

In the second trial held in March 1973, a jury returned a verdict of $59,584 as just compensation for the portion taken and $966,249 for damages to the remainder. The State is appealing from the judgment entered on that verdict.

The highest value the defendants' experts at the second trial placed on the 99.266 acres was $1,688,000. The highest value the State's experts placed on this acreage was $1,466,000. The recovery the defendants will enjoy as a result of the Forest Preserve condemnation and this proceeding, if the judgment in this case is upheld, would be $2,825,833 computed as follows:

Recovery in November 1970 from Forest
Preserve condemnation of 95.010 acres .................... $1,800,000

Recovery for value of 4.256 acres
taken by the State ....................................... 59,584

Amount of verdict in this proceeding for
damages to remainder (95.010 acres) ..................... 966,249

Total ................. $2,825,833

Thus, the condemnation by the Forest Preserve and this proceeding would give the defendants $1,137,833 more than the highest value their own experts placed on their property.

The second jury determined that the part taken, which was the frontage, had a value of $14,000 ($59,584 divided by 4.256) per acre. Assuming the remainder had the same value as the frontage, the 95.010 acres, if not damaged by the taking of the frontage, would have a value of $1,330, 147. Computing the value of the remainder on the basis of the per-acre price attributed to the part taken is supported by the opinion of defendants' experts who reached their conclusions by placing approximately the same value per acre on the remainder before the taking as they did on the part taken. The verdict being appealed together with the recovery in the Forest Preserve condemnation gives the defendants approximately $1,400,000 more than the value of the remainder computed on the basis of the amount awarded by the jury for the 4.256 acres taken. While the Forest Preserve condemnation was instituted approximately 17 months after the valuation date (December 26, 1968) used at the second trial, and the value of the remainder may have increased during that interval, there is nothing in the record to indicate that an increase of $1,100,000 or even more was a likely probability.

The issues raised by this appeal and reviewed in this opinion in the following order are whether: (1) The court erred in admitting defendants' valuation evidence based upon the assumption that there was a reasonable probability of both annexation and rezoning with Elk Grove Village or Schaumburg; (2) An instruction concerning the highest and best use of the land was proper; (3) The court erred in denying the State's petition to file an amended complaint and motion to strike defendants' cross-claim for damages; (4) The court erred in excluding stipulations offered by the State to mitigate damage to the remainder; (5) The court erred in ruling the contract of sale to the Romanos as well as evidence of the amount of the Forest Preserve award inadmissible; (6) The verdict in the first trial should be reinstated.

■■■ When land is taken for public use by condemnation, the owner may show what the highest and best use would be at the time of the condemnation provided a reasonable probability of rezoning is established by the evidence. *(Lombard Park District v. Chicago Title & Trust Co.* (1968), 103 Ill. App. 2d 1, 242 N.E.2d 440; *Department of Public Works & Buildings v. Rogers* (1967), 78 Ill. App. 2d 141, 223 N.E.2d 177, *aff'd* (1968), 39 Ill. 2d 109, 233 N.E.2d 409; *Park District v. Becker* (1965), 60 Ill. App. 2d 463, 208 N.E.2d 621.) The theory which the defendants presented was that the highest and best use of the property was for multi-family residential units. This would require rezoning after the

property was annexed to either Elk Grove Village or Schaumburg. It is the trial court's responsibility to make a preliminary determination that there is sufficient evidence to establish a reasonable probability of rezoning so as to permit expert opinions of value based upon that probability. (*Lombard Park District v. Chicago Title & Trust Co.* (1968), 103 Ill. App. 2d 1, 242 N.E.2d 440.) Because the defendants' property was not a part of either Elk Grove Village or Schaumburg, however, rezoning could not be accomplished by either municipality without prior or simultaneous annexation.

The State argues that evidence of the reasonable probability of rezoning is *per se* too speculative for consideration by a jury where the property has not yet been annexed, and in that circumstance should be excluded as a matter of law. This suggestion was rejected in *Lake County Forest Preserve v. Reliance Standard Life Insurance Co.* (1975), 29 Ill. App. 3d 145, 151, 329 N.E.2d 344, as too inflexible. We agree with that conclusion.

The record reveals repeated reference by the experts to the use of pre-annexation agreements for the benefit of land owners as well as the annexing municipalities. This procedure is commonly used by developers to obtain annexation and rezoning through one series of negotiations rather than risking annexation without an indication of future zoning. However, pre-annexation agreements permitted by section 11—15.1—1 of the Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—15.1—1) are not available to property owners unless they are in a position to comply with the requirements which govern annexation of unincorporated areas to a municipality set forth in sections 7—1—2 and 7—1—7 of the Municipal Code (Ill. Rev. Stat. 1973, ch. 24, pars. 7—1—2 and 7—1—7).

■■ Section 7—1—2 of the annexation statutes (article 7, division 1 of the Municipal Code) permits annexation in two ways: One is by a petition signed by a majority of the owners of record of land in the territory to be annexed; the second is by adoption of an ordinance by the municipality desiring the annexation. Under both procedures the territory annexed must be contiguous to the municipality (Ill. Rev. Stat. 1973, ch. 24, pars. 7—1—3 and 7—1—4). The defendants' property was contiguous to neither Schaumburg nor Elk Grove Village. It was separated from the boundaries of Elk Grove Village by Forest Preserve property. Thus, to accomplish an annexation to Elk Grove Village, a portion of the Forest Preserve property would have to be included. That municipality could not, as defendants concede before this court, annex defendants' property by an ordinance which carved a corridor through the Forest Preserve without the Forest Preserve's consent. *In re Petition of Town of Normal* (1972), 5 Ill. App. 3d 363, 283 N.E.2d 44.

Defendants, relying on *In re Annexation to Village of Buffalo Grove*

(1970), 128 Ill. App. 2d 261, 261 N.E.2d 746, argue that where the annexation is by petition of the owners, the consent of an owner whose land must be included to make the territory contiguous to the municipality is not required. The defendants misread the holding in that case. It does not dispense with the statutory requirement that the petition be "signed by a majority of the owners of record of land" in the territory. It holds only that where the majority of the owners in the territory consent, the petition can include land of a nonconsenting owner which is needed to connect the territory to be annexed with the municipality. In situations where only two owners are involved and where the owner of the property needed to provide contiguity objects, neither *In re Annexation to Village of Buffalo Grove* nor section 7—1—2 makes the other owner "the majority."

■■ Thus, the Forest Preserve was in a position to defeat the annexation unless there was more than one other owner of record of land in the territory proposed for annexation. The defendants did not advance the position in their brief that there may have been more than two owners of record, but suggested it for the first time in oral argument in this court. Having been raised, consideration of this point is relevant to a determination of the reasonable probability of annexation to Elk Grove Village.

There were two tracts of land in the territory to be annexed—that of the Forest Preserve and the defendants', the latter being owned by a trust for which Kelly and Tures were acting as co-trustees until the sale to the Romanos, and thereafter owned by a trust of which the American National Bank & Trust Company was trustee. While Kelly and Tures were co-trustees, they could not act separately but only as a unit (*Maton Bros. v. Central Illinois Public Service Co.* (1934), 356 Ill. 584, 191 N.E. 321); upon the sale of the property to the Romanos, there was only one trustee. Therefore, we conclude that the condemned property as well as the remainder was owned by a single entity, and that in order to provide the majority consent required by the statute, it could not be annexed to Elk Grove Village through Forest Preserve property without the approval of the Forest Preserve.

■■ ■ In reaching this conclusion, we hold that beneficiaries of the trusts referred to were not owners of record within the meaning of section 7—1—2 and had no standing to sign an annexation petition as owners. In *People ex rel. Hart v. Village of Lombard* (1925), 319 Ill. 56, 149 N.E. 584, the court was faced with the issue of whether a trustee holding legal title was a property owner under the annexation statute. The court held that the trust was a landowner and the petition was insufficient unless signed by the trustee. In that case as well as in *In re Annexation to Village of Round Lake Park* (1975), 29 Ill. App. 3d 651, 331 N.E.2d 602, the question

of whether the signatures of beneficiaries could be used to establish a numerical majority was left unanswered. In the *Round Lake Park* case, unlike the present one, the trustee conveyed the trust property to the individual beneficiaries prior to the annexation. Because the beneficiaries in this case elected to retain the advantages of trust ownership by keeping title in the trust, and their beneficial interests continued as personal property, we do not regard them as owners for the purposes of the annexation statute. They were not eligible, therefore, to sign an annexation petition. This conclusion is supported by *Chicago Land Clearance Com. v. Darrow* (1957), 12 Ill. 2d 365, 146 N.E.2d 1, and *Chicago North Shore & Milwaukee R.R. Co. v. Chicago Title & Trust Co.* (1928), 328 Ill. 610, 160 N.E. 226, which hold that because the beneficiaries' interest in a land trust is personal property, the beneficiary is not a necessary party to a condemnation proceeding.

■■ The burden of proving reasonable probability of rezoning in a condemnation proceeding is on the landowner. *(Department of Transportation v. Western National Bank* (1976), 63 Ill. 2d 179, 185, 347 N.E.2d 161; *Lake County Forest Preserve District v. Reliance Standard Life Insurance Co.* (1975), 29 Ill. App. 3d 145, 151, 329 N.E.2d 344; *Lombard Park District v. Chicago Title & Trust Co.* (1968), 103 Ill. App. 2d 1, 9, 242 N.E.2d 440.) Similarly, the burden of proving that annexation could be accomplished is the landowner's. *(Lake County Forest Preserve District v. Reliance Standard Life Insurance Co.* (1975), 29 Ill. App. 3d 145, 151-52.) The defendants have failed to discharge their burden of proof with respect to the reasonable probability of annexation.

The defendants point to the Forest Preserve's cooperation in the annexation of an 1100-acre tract to Elk Grove Village by permitting a corridor to be carved through the Forest Preserve to make the tract contiguous to Elk Grove Village. The reasons which motivated the Forest Preserve to cooperate in that annexation were not explained by the record, and the Forest Preserve's consent to that annexation does not support the conclusion it would have cooperated with the defendants here. The Forest Preserve had plans to acquire the defendants' property even before the State instituted its condemnation proceeding, and negotiations must have taken place between the Forest Preserve and the defendants prior to the filing of this action. Because of the Forest Preserve's long-standing plans to acquire the defendants' property, it would have been contrary to the Forest Preserve's interest to lend its approval to an annexation which would result in increasing the value of defendants' property and the price the Forest Preserve would then have to pay to obtain it. It is unbelievable that the Forest Preserve would have acquiesced in an endeavor which would have increased its acquisition costs.

■■ Reference is made in defendants' brief to the possibility of annexation to Elk Grove Village or Schaumburg with the agreement of WGN Broadcasting or the Metropolitan Sanitary District, but there is no evidence in the record of the reasonable probability that they would have acquiesced. The bare possibility that WGN Broadcasting or the Metropolitan Sanitary District might have consented is too uncertain to discharge the burden which the defendants carry. Proof of the reasonable probability of annexation must be more than speculative, and must convince the court that the annexation could have been anticipated with such certainty as to enhance the market value of the land on the valuation date. As the record now stands, whether a reasonable probability of rezoning existed and the values expressed by experts based on that probability should not have been considered by the jury. *Department of Transportation v. Western National Bank* (1976), 63 Ill. 2d 179, 185, 347 N.E.2d 161.

The defendants refer also to the possibility of annexation under the procedure outlined in section 7—1—7 of the Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 7—1—7). This requires the consent of all landowners in the territory, and the unanimous consent required by this provision is not relaxed by the holding in *In re Village of Buffalo Grove.* Obviously, the defendants did not have the signature of all landowners in the territory to be annexed without the approval of the Forest Preserve.

Not only was the proof that annexation could be accomplished too speculative to establish a reasonable probability of rezoning, but whether Elk Grove Village had a zoning ordinance which would accommodate the value defendants' experts placed on their property is also unclear. As we read the record, Thomas Collins, one of defendants' experts, testified his opinion was based not upon the existing Elk Grove Village ordinance, but on an amendment to the ordinance then being planned. It was not explained how Mr. Collins knew whether the planned amendment would ever be adopted, and whether on the valuation date there was a reasonable probability that it would be adopted.

For the reasons set forth above, the judgment of the circuit court must be reversed and this case remanded for a third trial. Since a new trial is required, we consider the other errors the State attributes to the trial court in the second trial.

The State argues that the court erred in giving defendants' instruction No. 13 concerning the highest and best use of the property.[1] The

---

[1] The instruction provided:

"When I use the expression, 'highest and best use' of property, I mean that use which would give the property its highest cash market value on December 26, 1968.

This may be the actual use of the property on that date, or a use to which it was then adaptable and which could be anticipated with such reasonable certainty that it could enhance the market value on that date."

instruction is IPI-Civil 300.84 and is properly given where evidence is introduced showing property to be adaptable to other uses which would affect the market value of the property. Because of our holding that the defendants failed to establish a reasonable probability of annexation and rezoning, the instruction was not warranted in this case. If, on remand, the defendants are able to establish such a probability, and the court rules this evidence admissible, then the instruction may properly be given.

The defendants' contention that the remainder was damaged by elimination of access to it raised several issues. The State argues it should have been permitted to file an amended petition reflecting the subsequent acquisition of the remainder by the Forest Preserve. This petition alleged that although the State had title to the condemned parcel, it never restricted its use for access to the remainder. Because the Forest Preserve condemned the remainder before physical access was limited, the defendants suffered no damage. At the same time as it moved for leave to file its amended petition, the State also moved to dismiss the defendants' cross-petition for damages to the remainder. The circuit court properly denied both motions.

■■ The State's position is that the defendants suffered no damage because the actual construction of the Interstate Highway was delayed, and the defendants were left free to continue to use the portion taken for ingress and egress to the remainder until the Forest Preserve acquired the remainder. Even though as a matter of grace there was no physical interruption of access over the portion taken prior to the Forest Preserve becoming the owner of the remainder, the right to control the access vested in the State at the time of the quick take. The taking of physical possession was solely in the discretion of the State. That it did not immediately deny access to the remainder does not establish that it did not have the right to do so. See *Department of Transportation v. Western Bank* (1974), 22 Ill. App. 3d 47, 316 N.E.2d 663, 667, *aff'd in part, rev'd in part* (1976), 63 Ill. 2d 179, 347 N.E.2d 161.

The State's contention that possessory rights must be exercised before there is a compensable taking of access rights puts the property owner in an untenable position. Not knowing when the State would actually exercise possessory rights might bring to a standstill any plans the owner had to improve his property.[2] If he attempted to sell, the price he received for his property might reflect that the condemnor had not yet provided any alternative access. Nevertheless, he would not be entitled to

---

[2] In this case, such plans would no doubt have been chilled by the impending condemnation of the remainder by the Forest Preserve pursuant to the ordinance adopted before the State's proceeding was filed.

compensation for the difference in price because under the State's theory he could still use the portion taken for ingress and egress. To force the owner to file a later action to recover damage when the State finally took physical possession of the access, as opposed to legal title, would only result in multiple litigation.

The two decisions on which the State relies do not support its position with respect to when access rights were taken from the defendants. In *Department of Public Works & Buildings v. Association of Franciscan Fathers* (1972), 3 Ill. App. 3d 503, 278 N.E.2d 111, the property owner still had access to the remainder after the condemnation through roads other than the property condemned. The court, therefore, concluded that in order to complete the improvement contemplated which would have denied all access, the State would have to file an additional proceeding to take the property owner's remaining access. The facts in this case differ since the property condemned provided the only access. It should be noted that the court in *Association of Franciscan Fathers* concluded that the property owner had the right to file a cross-petition for damage to the remainder at a time when access had not yet been physically obstructed.

■■■■■ *Department of Public Works & Buildings v. Greenlee* (1965), 63 Ill. App. 2d 425, 211 N.E.2d 771, also relied on by the State, is distinguishable because in that case the Department had planned to take access, but then changed its plans and provided total access. The court there did not abuse its discretion by permitting an amendment which resulted in changing the valuation date to reflect the changed plans. In the case before us there was no change in the plans of the Department. The State seeks to take advantage of its own delay in exercising possessory rights and the subsequent condemnation by the Forest Preserve to escape paying for damage to the remainder, insofar as the defendants are able to prove they suffered damage. When the State received fee simple title to the portion of the property which provided access, the defendants lost their right of access to the remainder. If this resulted in any damage to defendants, they should have the opportunity to prove it at a new trial. The court did not err in refusing to strike defendants' cross-petition.

Although amendments to condemnation petitions should be permitted when necessary to a fair trial and final determination of the issues involved *(Department of Public Works & Buildings v. Greenlee* (1965), 63 Ill. App. 2d 425, 431-32, 211 N.E.2d 771), amendments should not be permitted where they change or prejudice the rights of a party. (*Sanitary District v. Chapin* (1907), 226 Ill. 499, 80 N.E. 1017.) In this case, the State sought leave to amend more than 2 years after the date of the award in the Forest Preserve condemnation. The proposed amendment would have

prejudiced defendants by postponing the valuation date to a time when defendants no longer owned the remainder, thereby precluding them from any showing of damage sustained between the quick take and the Forest Preserve condemnation. It is noted that any damage which might otherwise have been suffered during this time was undoubtedly minimized by the fact that defendants' access over the 4.256 acres taken was not physically interrupted so long as they owned the remainder.

■■ The State also urges that the trial court erred in its pretrial rulings precluding the State from filing stipulations to mitigate the damage to the remainder by providing alternate access. This contention raised the interplay between the State's condemnation and the Forest Preserve's condemnation of the balance and leads into the most difficult problem presented in this appeal.

Where access to a property is taken, depriving the owner of a valuable property right, the condemnor is entitled to introduce evidence that it will provide alternative access to mitigate damage to the remainder. *(East Side Levee & Sanitary District v. Jerome* (1923), 306 Ill. 577, 138 N.E. 192.) The accepted method of introducing such evidence is for the condemning authority to file a stipulation in open court binding itself to provide the improvement; the owner then has a vested right to enforce the stipulation. *(Forest Preserve District v. Eckoff* (1939), 372 Ill. 391, 24 N.E.2d 52.) The State filed stipulations prior to the second trial relating to two separate access roads which the trial court ruled inadmissible.

■■ This ruling required the jury to decide the amount of damage in the artificial setting that the State's taking permanently landlocked the remainder. The jury was not informed of the State's ability and willingness to provide access to the remainder. The only practical way to bring this information to the attention of the jury was to permit the introduction of the stipulations offered by the State setting forth the alternative access it was willing and prepared to provide. The State's stipulations should have been admitted at the second trial even though it was clear that because the Forest Preserve which already had access to the remainder through its adjoining property did not desire that any access roads be constructed, the stipulations would never be enforced and the access they contemplated would never be provided.

The defendants contend that the stipulations were properly held to be inadmissible because the action of the State showed that it never had any intention of building the roads. They point to letters from the State to the Federal officials who had instituted suit at the request of the State to condemn the necessary land for one of the proposed alternative access roads stating that the road would not be built, yet requesting that the Federal suit not be dismissed until after the trial in this case. The

defendants called this a "gimmick"; the trial court questioned the State's integrity and apparently ruled the stipulations inadmissible on this ground. To debate the intent of the State in attempting to file stipulations to mitigate is unnecessary except to point out that the dismissal of the Federal suit and the surrender of the Forest Preserve licenses all occurred *after* the property had become part of the Forest Preserve, and this was done at the request of the Forest Preserve. After the Forest Preserve acquisition, construction of new access roads would have been a useless act; the State should not be penalized for not expending money uselessly, nor required to provide a windfall for the defendants on the false hypothesis that the remainder was permanently landlocked because the roads were not provided.

To give the jury a complete picture of what transpired, the court should have admitted the stipulations, and also permitted the parties, if they desired, to offer evidence of the Forest Preserve's negotiation for the remainder, excluding, however, reference to price, that this was followed by the condemnation proceeding, that the Forest Preserve did not want access, and the reason why the procedures necessary to provide the access contemplated by the stipulations were never implemented. Expert testimony regarding the value of the remainder would then take into consideration the alternative access which could have been provided instead of, as was the case at the second trial, permitting expert testimony as to value on the assumption that the remainder was permanently landlocked. The language of the court in *Department of Public Works & Buildings v. Greenlee* is especially appropriate here and is recommended as a guide to the trial judge in ruling on the use of the State's stipulations at the next trial. The court said at page 432:

> "To permit the cause to proceed on the basis that the defendants would be, for all practical purposes, precluded from operating their business enterprise, when such was not the fact, made an unfair trial inevitable. To permit the jury to make their determination on a factual basis that never did, or never would, exist was obviously incorrect. It ended in the property owners being compensated for a loss that did not occur and for the State to pay for property that it did not acquire. Such an end, whatever else it may be, is not a just one."

Similarly, here, expecting the State to pay for damages to the remainder on the assumption it would not have provided access had the Forest Preserve acquisition not occurred does not lead to a just result.

A word of caution may be helpful in the next trial concerning the use of two stipulations offered by the State and based upon a license granted by the Forest Preserve for the stated consideration of $1. The State, by these

stipulations, bound itself to build an access road only so long as the Forest Preserve did not revoke the license. The revocable nature of the licenses and the load limit on connecting roads severly limit the usefulness of these stipulations in mitigation of defendants' damage. The trial court should permit the defendants to show the limited usefulness of that road by evidence and in argument.

■■ The defendants' attempt to preclude the State from showing that alternative access would have been provided because the State waited too long to formulate its plans. They point out that at the time of the valuation date as well as the quick take, specific plans had not been formulated by the State. Although this may be true, it does not preclude the State from showing access would have been provided, if needed. The condemning body must be allowed some flexibility to alter and amend plans for public improvements. In addition, it may take some time to negotiate with other land owners, public or private, to find the best route for substitute access. In *Forest Preserve District v. Eckhoff* (1939), 372 Ill. 391, 392, 24 N.E.2d 52, and *Smith v. Claussen Park Drainage & Levee District* (1907), 229 Ill. 155, 82 N.E. 278, the condemnors were permitted to file stipulations to mitigate damages as late as the time of trial. If the defendants suffered injury because of their temporary loss of the legal right to access during the period of time elapsing between the quick take and the taking of the remainder by the Forest Preserve, this is an element of damage which may be presented to and considered by the jury.

The trial court erred in its rulings which resulted in the trial being conducted on the theory that the remainder was landlocked. At the next trial, the State should be permitted to introduce the stipulations which were excluded at the second trial, and either party should be permitted to supplement and explain them in the manner indicated in this opinion.

The State contends it should have been permitted to offer evidence of the price at which the defendants sold their property to the Romanos, approximately 10 months after the State's petition to condemn was filed. It argues it was prejudiced by the exclusion of this evidence because without it the defendants' experts were able to testify the remainder was worth only $285,000 when they knew it had been sold to the Romanos for more than six times that amount.

■■ Sales subsequent to the filing of a condemnation petition are not for that reason incompetent or rendered dissimilar as a matter of law. (*Department of Public Works & Buildings v. Exchange National Bank* (1975), 31 Ill. App. 3d 88, 103, 334 N.E.2d 810; *Trustees of Schools v. Chicago City Bank & Trust Co.* (1970), 126 Ill. App. 2d 302, 305, 262 N.E.2d 80.) An offer to sell as well as the sale of the remainder by a property owner who claims a condemnation inflicted damage on his

remainder have been held to constitute an admission by the owner of the worth of the remainder after the taking and properly admissible in evidence. *(Springer v. City of Chicago* (1891), 135 Ill. 552, 26 N.E.514; *Sanitary District v. Pearce* (1903), 110 Ill. App. 592.) The decision, however, as to whether evidence of comparable sales or prior or subsequent sales of the condemned property or the remainder should be admitted rests in the discretion of the trial court and the trial court's ruling should not be reversed unless it has clearly abused its discretion. *(City of Chicago v. Blanton* (1958), 15 Ill. 2d 198, 202, 154 N.E.2d 242; *Forest Preserve District v. Eckoff* (1939), 372 Ill. 391, 394-95, 24 N.E.2d 52; *Forest Preserve District v. Barchard* (1920), 293 Ill. 556, 562, 127 N.E. 878.) In exercising this discretion, the trial court should consider the number and complexity of speculative and collateral issues which will be interjected by this evidence. This is to assist the court in determining whether other sales are sufficiently comparable to the time and circumstances of the condemnation so as not to confuse the jury and offset the benefits to be derived from the proof. *City of Chicago v. Blanton* (1958), 15 Ill. 2d 198, 202, 154 N.E.2d 242; *Trustees of Schools v. Chicago City Bank & Trust Co.* (1970), 126 Ill. App. 2d 302, 305, 262 N.E.2d 80.

■■ The contract under which the Romanos purchased the property would inject several speculative and collateral elements which might cause confusion or uncertainty as to the actual price the Romanos were paying. For example, the agreement provided for earnest money in the amount of $20,000. This was the only payment required of the Romanos until the closing, 5½ months after the deposit of the earnest money. $380,000 was to be paid on the closing and the balance of $1,350,000 in seven annual installments. The contract provided that the Romanos had no personal liability. In the event of default, the only remedy of Kelly and Tures was to foreclose on any portion not conveyed, retaining payments to time of the default as liquidated damages. The Romanos were privileged to take out portions of the property as installments of the purchase price were paid. The seller was permitted to remain on the premises without rent payments for 9 months, to continue the nursery business operated on the property, and to remove trees and nursery stock. The sale to the Romanos did not take place until 9½ months after the valuation date. While any of these elements of the transaction taken alone[3] might not be sufficient to exclude the contract, the trial court, although confronted by a close question, did not abuse its discretion by concluding

---

[3] For example, installment sales may be admitted in evidence to assist a jury in arriving at the fair cash market value of the property, but while competent their value as evidence is for the jury. *Forest Preserve District v. Barchard* (1920), 293 Ill. 556, 563, 127 N.E. 878.

that taken together they would present too many collateral issues to the jury.

The amount of the award in the Forest Preserve condemnation was also properly excluded. It is a well-established doctrine that the amount of condemnation awards or purchase price under threat of condemnation are not admissible as evidence because they are the result of forced transactions rather than voluntary ones. *(Forest Preserve District v. Galt* (1952), 412 Ill. 500, 504-05, 107 N.E.2d 682; *Jefferson Park District v. Sowinski* (1929), 336 Ill. 390, 393, 168 N.E. 370; *Chicago & Western Indiana R.R. Co. v. Heidenreich* (1912), 254 Ill. 231, 240, 98 N.E. 567; *Peoria Gas Light & Coke Co. v. Peoria Terminal Ry. Co.* (1893), 146 Ill. 372, 377, 34 N.E. 550.) Moreover, the amount of the award granted by one jury might be misleading when presented to a second jury which did not have before it the evidence on which the first jury relied. Thus, the amount of the Forest Preserve condemnation award was not competent evidence as to the value of the 4.256 acres taken by the State or the remainder after the taking.

■■ The State contends that it was error for the trial judge to set aside the verdict in the first trial and prays for reinstatement of the judgment entered on that verdict. After the court granted the defendants a new trial on all issues, the State petitioned this court for leave to appeal from that order pursuant to Supreme Court Rule 306 which provides:

"An appeal may be taken from an order of the circuit court granting a new trial *only* on the allowance by the Appellate Court of a petition for leave to appeal." Ill. Rev. Stat., ch. 110A, par. 306(a)(1).

The State's petition was denied. Having been before this court on the petition for leave to appeal, the order granting a new trial on all the issues is not properly before this court on this appeal. *Martino v. Barra* (1973), 10 Ill. App. 3d 97, 100, 293 N.E.2d 745.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

GOLDBERG, P. J., and BURKE, J., concur.